**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

FLAVAWORKS ENTERTAINMENT, INC.,
BLATINO MEDIA, INC.,

Plaintiffs,

vs. **CASE NO.: 1-24-cv-09725**

Honorable Franklin U. Valderrama
Magistrate: Honorable Appenteng

JOHN DOES, et al., including
CHRISTOPHER LARINO and
MICHAEL SHANE GORDON, et al,

Defendants.
_____________________________/

**DEFENDANT MICHAEL SHANE GORDON'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**

Defendant Michael Shane Gordon, by and through his counsel, respectfully moves this Court to dismiss the Fourth Amended Complaint filed by Plaintiffs Flava Works Entertainment, Inc. and Blatino Media, Inc. pursuant to Federal Rules of Civil Procedure 12(b)(1), 17(a), 12(b)(2), 12(b)(3), and 12(b)(6). In support of this Motion, the Defendant states as follows:

## INTRODUCTION

Plaintiffs FlavaWorks Entertainment, Inc. (herein referred to as "FlavaWorks Entertainment") and Blatino Media, Inc. (herein referred to as "Blatino Media") bring this action against all Defendants for direct copyright infringement (Count I), contributory copyright

infringement (Count II), vicarious copyright infringement (Count III), and inducement of copyright infringement (Count IV).

At the outset, Plaintiffs made a "fleeting reference" to a trademark infringement claim(s) pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.* See, Plaintiffs' Fourth Amended Complaint, ¶ 1. Plaintiffs never pled adequate notice or facts supporting a Lanham Act action and/or Count, and the only reference to a Lanham Act cause of action is in their first paragraph of the Fourth Amended Complaint. Plaintiffs never drafted a separate and distinct Lanham Act Count in this Fourth Amended Complaint or prior complaints. There are neither allegations nor facts pled to place the Defendant on notice let alone defend the "fleeting reference" to a trademark infringement Lanham Act cause of action. Because Plaintiffs failure to state a trademark infringement Lanham cause of action, and pursuant to Federal Rule of Civil Procedure 12(b)(6), this Defendant requests that the court dismiss the trademark infringement Lanham Act reference as a failure to state a claim and be dismissed for any subsequent litigation of this lawsuit.

The Plaintiffs' Four Count Fourth Amended Complaint should also be dismissed for the following reasons:

**I. Pursuant to FRCP 12(b)(1) and 12(b)(6) because the Plaintiffs are not owners of the alleged infringed copyrighted works.**

**II. Pursuant to FRCP 12(b)(2), the Court lacks personal jurisdiction over the Defendant.**

Plaintiffs also fail to state claims upon which relief can be granted. Plaintiffs' Counts I through IV consist exclusively of (1) lists of causes of action elements and definitions, and/or (2) conclusory legal or factual allegations. Plaintiffs' Complaint is so bereft of operative facts that it can only be said merely to create the *suspicion* of a legally cognizable right of action. See, *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 545 (2007), citing, 5 C. Wright & A. Miller, Federal Practice

and Procedure § 1216, pp. 235—236 (3d Ed. 2004). Plaintiffs' scant factual allegations do not move their claims "across the line from conceivable to plausible." See, *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009). This Defendant states that the Plaintiffs' Fourth Amended Complaint should also be dismissed for a more definitive statement, pursuant to FRCP 12(e), but believes that there are significant grounds for dismissal for the reasons set out below and reserves the right to bring a motion to dismiss pursuant to FRCP 12(e) later.

## I. **Pursuant to FRCP 12(b)(1) and 12(b)(6), the Plaintiffs are not the proper parties to bring an action for the alleged infringement of copyrighted works.**

Plaintiffs are not, and have never been, the owners of the allegedly infringed copyrighted works. In the Plaintiffs sur-reply to this Defendant's Motion to Transfer Venue, Plaintiffs admitted that on July 13, 2022, Mr. Bleicher became the owner of all the copyrighted works owned by a different entity—Flava Works, Inc.

Plaintiffs ignored in their sur-reply, as well as in the copy of the copyright transfer agreement, that Flava Works, Inc. ever made an assignment of any right to recover for **prior** copyright infringement actions. Mr. Bleicher may bring a copyright infringement action against this Defendant for any alleged copyright infringement **after** the date that Mr. Bleicher became the owner **and** only by Mr. Bleicher, not these Plaintiffs.

Flava Works, Inc. may also be a party to bring any copyright infringement action for acts prior to July 13, 2022 depending on the current posture of the bankruptcy estate and the United States Trustee. For any alleged copyright infringement acts after July 13, 2022, Mr. Bleicher may be the proper party. Blatino Media may might also able to assert to be an exclusive agent for any copyright infringement action for an infringement after July 13, 2022. However, Plaintiffs never pled when this Defendant, or any Defendant, infringed a copyright owned by these Plaintiffs.

These Plaintiffs never owned the alleged infringed copyrighted works, and any prior infringement may only be brought by Flava Works, Inc. Any copyright infringement post-assignment may be by Mr. Bleicher.

The Plaintiffs cannot cure this factual deficiency with the addition of the proper parties. These two Plaintiffs can never bring this lawsuit because of the grave admissions contained in their sur-reply and the July 13, 2022 agreement. [Attached hereto as **Exhibit A** is a copy of the Plaintiffs Sur-Reply to the Defendant's Motion to Transfer Venue and the July 13, 2022 agreement.]

To bring a copyright infringement claim under the Copyright Act, *Plaintiffs must be the copyright owners or the exclusive licensees.* See, 17 U.S.C. § 501(b). These Plaintiffs together do not satisfy that basic requirement.

The Seventh Circuit has clarified that the § 501(b) ownership requirement is not itself an Article III standing requirement. See, *HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 381 (7th Cir. 2011). Rather, the question of whether a plaintiff is a copyright owner or exclusive licensee is a merits question subject to ordinary pleading standards. Therefore, a plaintiff's failure to allege and state its status as a legal or beneficial owner of an exclusive right is a failure on the merits to be dismissed pursuant to Rule 12(b)(6), and not a jurisdictional defect under Article III.

Furthermore, the Copyright Act has been interpreted to forbid holders of copyrights from utilizing third parties to bring suit on their behalf. "We do not believe the Copyright Act permits holders of rights under copyrights to choose third parties to bring suits on their behalf. While F.R.Civ.P. 17(a) ordinarily permits the real party in interest to ratify a suit brought by another party, … the Copyright Law is quite specific in stating that only the 'owner of an exclusive right under the copyright may bring suit.'" See, *Photofile, Inc. v. Graphicomp Sys.*, 92 C 8414, 1993 WL

375769, at *3 (N.D. Ill. Sept. 22, 1993) quoting *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982).

The holder of a non-exclusive license is not entitled to complain about any alleged infringement of the copyright. See, *HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d at 382, wherein the Seventh Circuit interpreted § 501(b) to provide that the holder of an exclusive license to distribute a particular work can sue under the Copyright Act, while the holder of a non-exclusive license may not.

**A, <u>FlavaWorks Entertainment.</u>**

Plaintiffs have admitted in pleadings filed with this court, that Plaintiff FlavaWorks Entertainment is not a legal or beneficial owner of an exclusive right but ***instead*** is an "exclusive enforcement agent" for copyrights owned by Mr. Phillip Bleicher.

In **Exhibit A**, Plaintiffs' Sur-Response opposing this Defendant's Motion to Transfer Venue, Plaintiffs stated that pursuant to a July 13, 2022 Copyright Transfer Agreement that all right, title, and interest in the copyright works, trademarks, customer databases, and digital content owned or controlled by Flava Works, Inc.[1] were assigned to Mr. Bleicher, a non-party Illinois resident. See, **Exhibit A, pages 2 and 3.**

---

[1] Flava Works, Inc. should not be confused with FlavaWorks Entertainment, Inc. Defendant's searches of the Illinois Secretary of State's Business Entity Search uncovered a disjointed series of businesses named Flava Works, Inc. including: (1) Flava Works, Inc. incorporated in Illinois on Nov. 3, 2004, and dissolved on Jan. 2, 2007 (File No. 63867039); (2) Flava Works, Inc. incorporated in Florida and qualified to conduct business in Illinois on April 5, 2010, and revoked on Sept. 12, 2014 (File No. 67051416); and (3) Flava Works Inc. incorporated in Illinois on April 16, 2015, but not in good standing (File No. 70135426). Plaintiffs neither indicate which Flava Works, Inc. was the author and/or copyright claimant of the allegedly infringed works, nor supply factual allegations or proof of assignment of ownership or exclusive license among and between the various entities.

Plaintiffs further stated that in March 2024[2], Mr. Bleicher apparently executed a Copyright Enforcement Services Agreement, appointing Plaintiff FlavaWorks Entertainment as his "exclusive enforcement agent." See, **Exhibit A, Page 2**.

Importantly for this motion to dismiss, plaintiffs have admitted succinctly that "[F]lavaWorks Entertainment, Inc. is the authorized enforcement agent." See, **Exhibit A, Page 3**.

Mr. Bleicher cannot deputize a third party (i.e., Plaintiff Flava Works Entertainment) as his agent for enforcement of copyrights owned by Mr. Bleicher. Assuming arguendo that the Copyright Transfer Agreement of July 13, 2022, actually and lawfully assigned the relevant copyrights to Mr. Bleicher, ***he*** might be the only legal or beneficial owner of an exclusive right entitled to bring this action.

Plaintiffs, Mr. Bleicher and Flava Works, Inc. chose not to name Mr. Bleicher and Flava Works, Inc. as a Plaintiff. Should Plaintiffs now request leave to amend and have Mr. Bleicher or Flava Works, Inc. added as a party to this dispute, the Plaintiff Flava Works Entertainment's claims would **not** be cured and remain subject to dismissal for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) due to its failure to satisfy the requirements of 17 U.S.C. § 501(b).

**B. <u>Blatino Media.</u>**

Plaintiff Blatino Media is also not an owner of Mr. Bleicher's copyrights and cannot bring this lawsuit to enforce them. Plaintiffs' Fourth Amended Complaint only alleges that Plaintiff FlavaWorks Entertainment produces and registers copyrights for its works. See, Plaintiff's Fourth

[2] Plaintiffs do not indicate why they do not know the exact date of execution.

Amended Complaint, ¶¶ 12—15. Plaintiffs' allegation that Mr. Bleicher executed a Licensing and Content Publishing Agreement to grant Plaintiff Blatino Media "exclusive rights to publish and distribute" the copyrighted works (**Exhibit A, Page 2**) is directly contradicted by Plaintiffs' Fourth Amended Complaint. "Plaintiff distributes its adult entertainment through various distributors and licensees, as well as through its websites including FlavaFlix.com, CocoDorm.com, Thugboy.com, PapiCock.com and RawRods.com among others." See, Plaintiffs' Fourth Amended Complaint, ¶ 13.

Defendant examined the "Legal" pages of every website listed by Plaintiffs. Each website posts the same Terms and Conditions language, which states that such websites are managed and operated by FlavaWorks Entertainment, Inc. and that any materials found on the sites may not be distributed *without the prior express permission of FlavaWorks Entertainment, Inc.* Plaintiffs' allegation that Plaintiff Blatino Media owns the exclusive license to publish and distribute Mr. Bleicher's copyrighted works is contradicted by Plaintiffs' admissions publicly made on those websites. Therefore, Blatino Media does not have exclusive license.

If anything, Plaintiff Blatino Media's license to publish and distribute the copyrighted works is non-exclusive and would also take effect after August 2022 when Mr. Bleicher entered into an agreement with Blatino Media. As a non-exclusive licensee, Plaintiff Blatino Media still lacks standing to bring any of the asserted causes of action in this action. Should Plaintiffs request leave to amend and have Mr. Bleicher and /or Flava Works, Inc. added as a party to this lawsuit, the Plaintiff Blatino Media's claims would not be cured and remain subject to dismissal for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) due to its failure to satisfy the requirements of 17 U.S.C. § 501(b).

### C. Plaintiffs fail to establish that they are the real parties in interest under Fed. R. Civ. P. 17(a) and owners of the right to bring suit for any prior copyright infringements

"Separate from the jurisdictional Article III case-or-controversy requirement is the prudential limitation set forth in Federal Rule of Civil Procedure 17(a), provid[ing] that '[e]very action must be prosecuted in the name of the real party in interest and 'requir[ing] that the complaint be brought in the name of the party to whom that claim 'belongs' or the party who 'according to the governing substantive law, is entitled to enforce the right.'" See, *Monco v. Zoltek Corp.*, 397 F. Supp. 3d 1165, 1178 (N.D. Ill. 2019), quoting *Rawoof v. Texor Petroleum Co., Inc.*, 521 F. 3d 750, 756 (7th Cir. 2008). Rule 17(a) is "a codification of the principle that a litigant cannot sue in federal court to enforce the rights of third parties – in other words, a prudential limit on standing." See, *Act II Jewelry, LLC v. Wooten*, 301 F. Supp. 3d 905, 911 (N.D. Ill. 2018). Plaintiffs must "possess the right sought to be enforced and not necessarily [be] the person who will ultimately benefit from the recovery." See, *Act II Jewelry, LLC*, 301 F. Supp. 3d at 910, quoting *Checkers, Simon & Rosner v. Lurie Corp.*, 864 F.2d 1338, 1343 (7th Cir. 1988).

Section 501(b) grants the right to institute an action for any infringement to "he or she [who] is the owner of it" at the time of the infringement. The right to sue for a past infringement of copyright is a piece of intangible property known as a *chose in action*. See, for example, *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 934 (7th Cir. 2005), fn. 2, approving a definition of "chose in action" as 'a personal right not reduced into possession but recoverable by suit in law. It is a property right characterized as personalty….'

The chose in action to sue for infringement of copyright is a standalone piece of property that does not transfer along with the transfer of ownership of the copyright. "The general rule is that one seeking to recover money damages for infringement of a United States patent (an action

'at law') must have held the *legal title* to the patent *during the time of the infringement*." See, *Ziklag IP LLC v. Netflix, Inc.*, 24-CV-01789, 2025 WL 904311, at *4 (N.D. Ill. Mar. 25, 2025), quoting *Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991), emphasis in original. "[I]t is a great mistake to suppose that the assignment of a patent carries with it a transfer of the right to damages for an infringement committed before such assignment." Id., quoting *Moore v. Marsh*, 74 U.S. 515, 521 (1868). "Thus, the conveyance of the patent does not normally include the right to recover for injury occurring to the prior owner." Id., quoting *Minco, Inc. v. Combustion Engr., Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996). Importantly, an assignment agreement that contains only a "bare reference to all right, title, and interest does not normally transfer the right to sue for past infringement." Id.

By Plaintiffs' own admissions, Plaintiffs are not the authors and/or original owners of these alleged infringed copyrighted works. Assuming arguendo, that an assignment of copyrights to these Plaintiffs occurred, that assignment of copyrights did not transfer to Plaintiffs, or Mr. Bleicher, the right to bring suit for infringements that occurred ***prior*** in time to that assignment.

The purported Copyright Transfer Agreement which transferred copyrights from the alleged author and/or original owner, Flava Works, Inc., to Mr. Bleicher, did not transfer the right to sue for any past copyright infringements. See **Exhibit A**.

Plaintiffs conspicuously fail to state *when* any of the infringing acts which constitute their causes of action were performed by the Defendants. Because Plaintiffs fail to allege when each of the infringing acts occurred, Plaintiffs *ipso facto* have not, and cannot, allege that they were the owners when the infringement occurred.

This Court should not speculate about ownership of the copyrights at the time of infringement on behalf of Plaintiffs. Because Plaintiffs have not, and cannot, allege that they were the owners of the infringed copyrighted works when an infringement occurred, this Court must dismiss this action for lack of standing, failure to institute suit in the name of the real party in interest, and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

## II. **<u>This Court must dismiss Plaintiffs' Fourth Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) because this Court lacks personal jurisdiction over Defendant Michael Shane Gordon</u>**[3]

While reviewing the court's July 15, 2026 order denying the motion to transfer venue, the Defendant does not waive his prior position and, with all due respect, preserves his argument that this court does not have personal jurisdiction over him and makes the argument below for a dismissal for the lack of personal jurisdiction pursuant to FRCP Rule 12(b)(2).

"If a court lacks personal jurisdiction over a party to an action, it must dismiss the case as to that party. A complaint need not include facts alleging personal jurisdiction, but when a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction over the defendant. In determining whether personal jurisdiction exists, we accept all well-pleaded allegations in the complaint as true. The court may consider affidavits or other evidence in opposition to or in support of its exercise of jurisdiction. '[O]nce the defendant

---

[3] "Personal jurisdiction must be analyzed and established over each defendant independently." See, *NottinghamSpirk Design Associates, Inc. v. Halo Innovations, Inc.*, 603 F. Supp. 3d 561, 566 (N.D. Ohio 2022). "There is no such thing as supplemental specific jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim." See, *In re Testosterone Replacement Therapy Products Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040, 1048 (N.D. Ill. 2016), quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F. 3d. 266, 275 n. 6 (5th Cir. 2006).

has submitted affidavits or other evidence in opposition to the exercise of jurisdiction; the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.' We resolve factual disputes in the plaintiff's favor, but unrefuted assertions by the defendant will be accepted as true." See, *Livingston v. Hoffman-La Roche Inc.*, 293 F. Supp. 3d 760, 764 (N.D. Ill. 2018), internal citations omitted.

The Copyright Act does not provide for nationwide service of process; therefore, personal jurisdiction in this action is controlled by Illinois law. See, Fed. R. Civ. P. 4(k)(1)(A). Since Defendant Gordon is not domiciled in Illinois, Plaintiffs must establish that this Court has the power to exercise jurisdiction over him pursuant to either (1) the Illinois long-arm statute[4], or (2) Defendant Gordon's voluntary consent to the personal jurisdiction of Illinois.

**A. <u>This Court may not exercise personal jurisdiction over Defendant Gordon pursuant to the Illinois long arm statute.</u>**

Under the Illinois' long-arm statute, personal jurisdiction can be general or specific. See, *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).

Defendant Gordon lacks the "continuous and systematic general business contacts" with Illinois to support general jurisdiction under the long-arm statute. See, Id. at 425—26, quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415—16 (1984). Defendant Gordon has not "purposefully directed his activities at [Illinois] or purposefully availed himself of the privileges of conducting business in that state," and Plaintiffs' injuries do not arise "out of the defendant's forum-related activities." See, *Tamburo v. Dworkin*, 601 F. 3d 693, 702 (7th Cir. 2010).

[4] Plaintiffs singularly reference the Illinois long arm statute (Plaintiffs' Fourth Amended Complaint, ¶ 10); however, Plaintiffs abandon this basis and fail to allege any facts to support personal jurisdiction against Defendant Gordon pursuant to the long arm statute.

Defendant Gordon is domiciled in and a resident of Alpharetta, Georgia. See, ¶ 9 of Exhibit 2 which is a copy of Defendant Gordon's Motion for Interdistrict Transfer to the United States District Court for the Northern District of Georgia or Dismissal. Defendant Gordon does not maintain a residence, a place of business, or have any connection to the Northern District of Illinois. Id. at ¶ 4.Defendant Gordon has never conducted any business or otherwise availed himself of the benefits of the Northern District of Illinois. Id. at ¶ 5.

The fact that the alleged harm to Plaintiffs may have been incurred in the State of Illinois is not sufficient for specific jurisdiction. See, *Labtest Int'l, Inc. v. Ctr. Testing Int'l Corp.*, 766 F. Supp 2d 854, 861 (N.D. Ill. 2011), finding in internet infringement case that "harm to the plaintiff in the forum is not enough to establish [specific] jurisdiction." Alleged acts which occurred on the Internet do not subject a defendant to specific jurisdiction in every state wherein the Internet can be accessed. See, *On the Cheap, LLC v. Does 1—5011*, 280 F.D.R. 500, 505 (N.D. Cal. 2011), wherein Court rejected argument that BitTorrent users subject themselves to jurisdiction in every state because defendant must purposefully avail itself of privilege of conducting activities in forum state.

Plaintiffs have not alleged, and cannot allege, that Defendant Gordon directed any activity toward the Northern District of Illinois. Plaintiffs' allegation that Defendant Gordon participated in peer-to-peer file-sharing networks (Plaintiffs' Fourth Amended Complaint, ¶ 16) on the Internet is insufficient to establish that this Court may exercise specific jurisdiction over Defendant Gordon.

Therefore, this Court lacks personal jurisdiction, specific or general, over Defendant Gordon pursuant to the Illinois long arm statute.

**B. <u>This Court may not exercise personal jurisdiction over Defendant Gordon based on alleged consent to a forum-selection clause in a non-party's Terms and Conditions</u>**

An allegation that Defendant Gordon accessed a website, owned and operated by a non-party to the case at bar, which possessed a forum-selection clause in its Terms and Conditions at some distant point in the past is not sufficient to support that Defendant Gordon consented to the jurisdiction of this Court in this dispute with these Plaintiffs. Plaintiffs have only alleged that Defendant Gordon clicked through and agreed to a forum selection clause in a Terms and Conditions Agreement with Flava Works, Inc., which is not a party to this suit, and should not be confused with Plaintiff FlavaWorks Entertainment, Inc. Such acceptance by Defendant Gordon to that forum selection clause, even if true, would only be relevant and enforceable in a suit brought by a different party than Plaintiffs.

Please note that the contractual obligation to resolve disputes in this forum, and to consent to its jurisdiction, does not follow the copyrighted works as they were passed from entity to entity before allegedly arriving in the hands of the Plaintiffs. The forum selection clause referenced by Plaintiffs is only binding upon and enforceable in disputes between user "hubrys" and Flava Works, Inc., neither of which is involved in this dispute. The Terms and Conditions Agreement, like any other contract[5], is only binding upon the parties to that contract. Neither Plaintiff in the case at bar was or is a party to that contract. Any suit brought by these Plaintiffs must be brought in the proper venue as laid out in 28 U.S.C. § 1400(a), i.e., "in the district in which the defendant or his agent resides or may be found," and could not be brought in this forum unless this forum could otherwise exercise jurisdiction over the Defendant Gordon, which it cannot.

[5] "A website's terms of service is a contract." See, *Bogard v. TikTok Inc.* 725 F. Supp. 3d 897, 904 (S.D. Ind. 2024).

Put most simply, Plaintiffs may bring suit against Defendant Gordon based on their erroneous belief that he infringed their copyrights, but they cannot do so in *this forum* relying on a forum selection clause binding only on non-parties to such suit. If Plaintiffs want to file suit against Defendant Gordon, then they must do so in Georgia, not Illinois.

Even if Flava Works, Inc. were added as a party to this dispute, this Court will still lack jurisdiction over Defendant Gordon. Plaintiffs cannot properly allege and support that user "hubrys," whether he or she is Defendant Gordon or not, accepted Flava Works, Inc.'s Terms and Conditions Agreement. As with any contract, a website's Terms and Conditions Agreement must have all of the elements of a contract, i.e., there must be (1) an offer, (2) an acceptance, and (3) consideration. Plaintiffs have not established that a non-paying member of Flava Works, Inc.'s website was required to agree to the Terms and Conditions Agreement, since its website's Terms and Conditions explicitly state that only paying members must click to agree to the Terms and Conditions.

The Court in *Hamera v. Best Buy Co. Inc.*, 790 F. Supp. 3d 664, 667 (N.D. Ill. 2025) provides a summary of Illinois law regarding the enforceability of a website's Terms and Conditions:

> In Illinois—as in virtually all jurisdictions—contract formation "requires mutual assent. As applied in the internet age, Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement. One way that a website can do that is by using "clickwrap" agreements. A website, for example, might be able to bind users to a service agreement by placing the agreement, or a scroll box containing the agreement, or a clearly labeled hyperlink to the agreement, next to an 'I Accept' button that unambiguously pertains to that agreement. On

> the other hand, a website generally will not have provided reasonable notice if it uses "browsewrap" agreements—which provide veiled notice to customers that mere use of the website constitutes agreement to various terms and conditions. Indeed, [b]rowsewrap agreements typically are not enforced.
>
> [F]all[ing] somewhere in between these two forms of agreement are websites that rely on simply displaying, somewhere on a webpage, a notice of deemed acquiescence and a link to the putative terms. In that situation, purported assent is largely passive. And when assent is passive, a court will recognize an enforceable contract only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms. Although these two parts may involve underlying facts, they are questions of law that require a fact-intensive legal analysis.

The existence of a Terms and Conditions Agreement *somewhere* on Flava Works, Inc.'s website is insufficient to establish assent to those terms. Plaintiffs' exhibit does not support Plaintiffs' allegation that all visitors are required to affirmatively click "I agree to Terms and Conditions and Legal Age" before viewing any content. See, Plaintiffs' Response in Opposition to Defendant Michael Shane Gordon's Motion, Page 2. Subsection 4.2 of Plaintiffs' Terms and Conditions explains:

> **In order to register and subscribe for a paid membership to one of the Sites, you must indicate agreement with the terms and conditions of this Agreement by checking the 'I have read and agree to the membership Terms and Conditions' checkbox on the registration page.** You will not be allowed to subscribe to the Sites before clicking that

> checkbox. Feel free to read and reread this Agreement as often as you want before subscribing to the Sites. If you do not wish to agree to these terms and conditions, do not click the "Trial Membership" button (in the case of free or trial memberships) or the "Click Here to Join" button (in the case of paid subscriptions). **You understand, however, that you will not be subscribed for a paid membership to the Sites unless you agree to the terms of this Agreement by clicking on the button as set forth above.** See, Plaintiff's Response in Opposition, Exb. B, § 4.2, emphasis added.

According to Plaintiffs' own Terms and Conditions Agreement, only *paid memberships* are required to affirmatively indicate acceptance of the Agreement by checking a box. For trial and free memberships, the Terms and Conditions indicate that a user only clicks a "Trial Membership" button. Free users are clicking a "Trial Membership" button, not a "I agree to the Terms and Conditions" button. This is the kind of passive "acceptance" described as "browserwrap" and which the *Hamera* court explains are not typically enforced.

Plaintiffs admit that user "hubrys," who they speculate to have been Defendant Gordon[6], only accessed their website as a "free user." See, Plaintiffs' Response in Opposition to Defendant Michael Shane Gordon's Motion, Page 2. Therefore, user "hubrys" did not give affirmative consent to the Terms and Conditions according to subsection 4.2 of Plaintiffs' own Terms and Conditions. If user "hubrys" did not affirmatively consent and agree to the Terms and Conditions agreement, Plaintiffs cannot now rely on the forum-selection clause in that agreement. Without proof of affirmative consent, Plaintiffs cannot establish that there was acceptance, a necessary requirement for a contractual relationship, even if the correct party, Flava Works, Inc., were added to this suit.

---

[6] Defendant's cursory Internet search resulted in several dozen websites containing users using the username "hubrys," none of which are related to Defendant Gordon.

Defendant Gordon is not now, nor has he ever been, a member of Plaintiffs' websites. Defendant Gordon has never entered into any agreement with the Plaintiffs nor agreed to any clause that mandated jurisdiction be within the Northern District of Illinois. See, Defendant Gordon's Motion for Interdistrict Transfer, Exb. 1, ¶ 6. Defendant Gordon has never agreed to be bound by any Terms and Conditions alleged by Plaintiffs. Id.

Additionally, Plaintiffs admit that user "hubrys," which they speculate is Defendant Gordon, never had access to Flava Works, Inc.'s copyrighted works, since user "hubrys" was only a free member of Flava Works, Inc.'s website[7]. Plaintiffs admit that such a "free user" would only have access to limited preview content. See, Plaintiffs' Response in Opposition to Defendant Michael Shane Gordon's Motion, Page 2.

It must be remembered that neither Plaintiff FlavaWorks Entertainment nor Plaintiff Blatino Media are parties to the Terms and Conditions agreement relied upon for Plaintiffs' jurisdiction argument. "This User Agreement constitutes a legal agreement between you and Flava Works[8] and spells out the terms and conditions to which users of any Flava Works Site are expected

[7] Plaintiffs refer to the server logs of RawRods.com as "Plaintiffs' server logs;" however, Plaintiffs offer no explanation how they possessed server logs nine (9) years before Plaintiffs existed. Similarly, the Terms and Conditions agreement to which Plaintiffs allege the user "hubrys" agreed has an effective date of January 1, 2011; again, nine (9) years before Plaintiffs existed. Plaintiff FlavaWorks Entertainment did not exist until May 19, 2023. See, FlavaWorks Entertainment, Inc. Articles of Incorporation Filing with Illinois Secretary of State. Plaintiff Blatino Media, Inc. did not exist until July 29, 2020. See, Blatino Media, Inc. Articles of Incorporation Filing with Illinois Secretary of State. This Court should not presume that Plaintiffs can accurately represent the business records of a different legal entity over which they did not at the time, and do not now, exercise control.

[8] "Flava Works" is defined by the Terms and Conditions agreement as referring only to Flava Works, Inc., a wholly separate legal entity which should not be confused with FlavaWorks Entertainment, Inc., and the FlavaWorks.com family of websites. See, Plaintiffs' Response in Opposition to Defendant Michael Shane Gordon's Motion, Exb. B, TOS.

to adhere." See, Plaintiffs' Response in Opposition to Defendant Michael Shane Gordon's Motion, Exb. B, TOS. As non-parties to the Terms and Conditions agreement, Plaintiffs cannot invoke the forum-selection clause.

Plaintiffs' reliance upon and application of *Flava Works v. Rossi*, 12-CV-1885, 2013 WL 1337326 (N.D. Ill. Mar. 29, 2013) to this dispute is inapposite and ignores the highly relevant fundamental difference between the dispute in *Rossi* and the case at bar. That fundamental difference is that Flava Works, Inc. was the plaintiff in *Rossi*. Flava Works, Inc., as a party to the Terms and Conditions Agreement, could invoke that agreement to support its jurisdiction argument. Unlike in *Rossi*, neither Plaintiff in the case at bar is a party to Flava Works, Inc.'s website agreement.

*Rossi* was a copyright infringement claim between Flava Works, Inc.[9] and a **paid subscriber** who consented to a forum-selection clause contained in a Terms and Conditions agreement covering the websites for which he had paid for access. Id. at *1. The paid subscriber used his access to Flava Works, Inc.'s websites to download copyrighted videos belonging to Flava Works, Inc. Id. The paid subscriber then uploaded those videos onto an online file-sharing website, which allowed third parties to download the videos without Flava Works, Inc.'s permission. Id. The court held that since the paid subscriber's infringing acts stemmed from his conduct while a paid subscriber to Flava Works, Inc.'s website, the forum selection clause was applicable to the dispute between Flava Works, Inc. and the paid subscriber.

[9] Flava Works, Inc. is a separate and legally distinct entity, which is not participating in the dispute at bar. Neither Plaintiff FlavaWorks Entertainment nor Plaintiff Blatino Media participated in *Rossi*.

> When Rossi chose to become a paid member of Flava Works' websites, he agreed to abide by specific terms and conditions included in the disputed Agreement. Among other things, Rossi agreed not to copy and distribute Flava Works's copyrighted videos. I[n] fact, had Rossi not consented to the terms of the Agreement, he would[n't] have been allowed access to the copyrighted videos and *there would be no basis for the instant lawsuit*. Flava Works' copyright infringement claims stem directly from Rossi's alleged violation of the Agreement and thus the forum selection clause is applicable to this case. Id. at *4.

In other words, the forum selection clause applied to the dispute in *Rossi* specifically because the paid subscriber was granted access to and obtained the relevant infringed copyrighted videos through his consent to the website's agreement as part of, and a requirement for, purchasing a paid membership to Flava Works, Inc.'s websites. That is how Flava Works, Inc.'s copyright claims in *Rossi* arose out of or were related to the website agreement.

If the copyrighted videos were obtained from some other source than a Flava Works, Inc. website using a paid login, then the dispute would not arise out of the agreement relationship between the paid subscriber and Flava Works, Inc., and the forum selection clause would not apply to an infringement action. See, for example, *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996), explaining that someone who found a copy of a copyrighted work (a CD-ROM of ProCD's SelectPhone software) on the street would not be affected or bound by the shrinkwrap license agreement between ProCD and its paying customer, who had purchased and opened the shrinkwrap, though federal copyright laws of their own force would still apply. ProCD could still sue the person who found the CD-ROM on the sidewalk if he or she infringed ProCD's copyrights but would have to do so in a forum complying with 28 U.S.C. § 1400(a). The shrinkwrap agreement would only be binding on ProCD and the paying customer.

Any copies of the works represented by registration numbers PAU 4-192-666, PA 0002025857, or PA 0001687480, alleged to have been shared in a "torrent swarm," would have to have been obtained elsewhere than Plaintiffs' website[10]. If the infringed works were not obtained through the access granted to user "hubrys" to RawRods.com because of his assent to the Terms and Conditions agreement, then his or her infringing acts do not arise out of or relate to the contractual relationship between user "hubrys" and Plaintiffs. Just as the hypothetical person who found the CD-ROM on the sidewalk in the *ProCD, Inc.* case could be sued for copyright infringing acts pursuant to the Copyright Act's venue rules, but not the terms of the shrinkwrap agreement, user "hubrys" may be sued for the alleged infringing acts pursuant to 28 U.S.C. § 1400(a), but not the forum-selection clause in the unrelated Terms and Conditions agreement.

Defendant Gordon was never a member, paid or otherwise, of Plaintiffs' websites. See, Defendant Gordon's Motion for Interdistrict Transfer, Exb. 1, ¶¶ 6—7. Defendant Gordon has never participated in a "torrent swarm" containing Plaintiffs' copyrighted videos. However, even if this Court takes Plaintiffs' allegations as true, Plaintiffs fail to establish that they may bring suit against Defendant Gordon *in this Court* based on infringement of copyrighted works that could not have been obtained by user "hubrys's" free membership to Flava Works, Inc.'s websites. Plaintiffs' allegations, if true, merely establish that Plaintiffs may bring suit against Defendant Gordon *in a Court*, but *not this Court.* Plaintiffs must bring their suit in compliance with the venue requirements of 28 U.S.C. § 1400(a), i.e., in a Georgia court.

---

[10] Additionally, of the 46 named copyrighted works listed on Exhibit A attached to Plaintiffs' Sur-Response, 23 works were authored and/or registered after 2011. Therefore, could not have been obtained by user "hubrys" through his or her access to RawRods.com in November of 2011.

According to Plaintiffs' own words, any infringing acts that Defendant Gordon allegedly committed could not have arisen out of user "hubrys's" free membership to Flava Works, Inc.'s website, since any such free membership limited access to "limited preview content." This Court cannot presume that Plaintiffs FlavaWorks Entertainment and Blatino Media are parties to Flava Works, Inc.'s website's Terms and Conditions agreement. Plaintiffs only allege they're the subsequent owners of some portion of Flava Works, Inc.'s copyrighted works; Plaintiffs cannot allege that they were parties to any prior contractual relationship of Flava Works, Inc. Even if the separate legal entity Flava Works, Inc. were added to this suit, it would not fix Plaintiffs' jurisdiction problem, because the alleged infringing acts would still not arise out of any contractual relationship with Flava Works, Inc.

If the alleged infringing acts occurred, then Plaintiffs must bring their action against Defendant Gordon according to 28 U.S.C. § 1400(a). Since Defendant Gordon is not a resident of Illinois and an Illinois court could not exercise personal jurisdiction over him, Plaintiffs suit must be brought within the District Court for the Northern District of Georgia, encompassing Defendant Gordon's residence in Alpharetta, Georgia. Personal jurisdiction is not proper in this Court.

## Conclusion

The Court should grant the relief requested because:

- **I. Dismiss the trademark infringement Lanham Act reference as a failure to state a claim and be dismissed for any subsequent litigation of this lawsuit.**
- **II. Pursuant to FRCP 12(b)(1) and 12(b)(6), the Plaintiffs are not the proper parties to bring an action for the alleged infringement of copyrighted works.**
- **III. Pursuant to FRCP 12(b)(2), the Court lacks personal jurisdiction over the Defendant.**

**WHEREFORE**, for the reasons stated above, the Defendant Michael Shane Gordon respectfully requests that this Honorable Court grant his motion to dismiss for the reasons stated above or for relief the court deems just.

Dated: July 30, 2026.

*(s) Michael P. Simkus*
**Simkus Law Firm, Professional Corporation**
MICHAEL P. SIMKUS, ESQ.
265 Stonegate Road, Suite 104
ALGONQUIN, ILLINIOIS 60102

EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| FlavaWorks Entertainment, Inc., | ) | |
| Blatino Media, Inc., | ) | |
| Plaintiff, | ) | Case No. : 1:24-cv-09725 |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| John Doe 1, et al | ) | |
| Defendants. | ) | |

PLAINTIFFS' SUR-RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE OR DISMISS

NOW COME the Plaintiffs, FlavaWorks Entertainment, Inc. and Blatino Media, Inc. ("Plaintiffs"), by and through their undersigned counsel, and pursuant to leave of Court, submit this Sur-Reply in Opposition to Defendant's Motion to Transfer Venue or Dismiss (Dkt. 122). This Sur-Response is necessary to correct the record and address new factual assertions and legal arguments that Defendant improperly raised for the first time in his Reply (Dkt. 148).

Defendant's Reply references a supposed "Flava Works bankruptcy," an assertion that is both factually inaccurate and legally irrelevant. The entity referred to as "Flava Works, Inc." is not a party to this case. The actual Plaintiffs FlavaWorks Entertainment, Inc. and Blatino Media, Inc. are both active Illinois corporations in good standing. Neither has ever been a debtor in any bankruptcy proceeding. Defendant's newly raised and misleading statement serves only to confuse the record and misrepresent Plaintiffs' standing and financial viability, and it should be disregarded entirely.

Defendant also misrepresents the chain of ownership of the copyrighted works at issue. The evidentiary record conclusively establishes the lawful transfer and continuity of title. On July 13, 2022, Flava Works, Inc. executed a Copyright Transfer Agreement assigning to Phillip Bleicher all of its intellectual property, including all right, title, and interest in the copyrighted works, trademarks, customer databases, and digital content owned or controlled by the assignor. The Agreement granted Bleicher the full right to reproduce, distribute, publish, license, enforce, and otherwise exploit the assigned works and was duly notarized in Cook County, Illinois. It further provided that it may be recorded with the United States Copyright Office to provide constructive notice of the transfer under 17 U.S.C. § 205. A copy of this agreement is attached as Exhibit A.

The transferred works include, among others, the copyrighted materials registered with the United States Copyright Office under Registration Nos. PAU 4-192-666, PA 0002025857, and PA 0001687480. Each of these registrations appears in Addendum A to the 2022 Agreement and includes works that Defendant Gordon unlawfully accessed and reproduced. Following that transfer, Bleicher executed two subsequent notarized agreements that maintain the ownership chain. In August 2022, Bleicher entered into a Licensing and Content Publishing Agreement with Blatino Media, Inc., granting it exclusive rights to publish and distribute the works. In March 2024, Bleicher executed a Copyright Enforcement Services Agreement appointing FlavaWorks Entertainment, Inc. as his exclusive enforcement agent. Both agreements were notarized and recorded with the U.S. Copyright Office. Bleicher serves as President of both Plaintiff entities, ensuring continuous operational control.

Consequently, Bleicher is the lawful copyright owner, Blatino Media, Inc. is the exclusive publisher, and FlavaWorks Entertainment, Inc. is the authorized enforcement agent. The Plaintiffs therefore possess both independent and derivative standing to prosecute this action. Defendant’s insinuations of ownership defects are demonstrably false, contradicted by notarized instruments, and irrelevant to the question of venue.

Defendant’s Reply further introduces new accusations of “forum shopping” and novel claims concerning judicial economy, docket congestion, and an alleged lack of an Illinois nexus. None of these arguments appeared in his original Motion to Transfer (Dkt. 122), and because Plaintiffs had no prior opportunity to address them, these new matters are procedurally improper and should be disregarded. Even if considered, the arguments lack merit. Plaintiffs’ forum choice is entitled to substantial deference, and Illinois courts have consistently upheld jurisdiction under identical circumstances involving the same website, the same Terms of Service, and the same forum-selection clause. See *Flava Works, Inc. v. Rossi*, No. 12-cv-1885, 2013 WL 1283829 (N.D. Ill. Mar. 29, 2013), where the Court held that the defendant waived his ability to challenge personal jurisdiction and venue by consenting to an enforceable forum-selection clause. Defendant’s prior assent to Plaintiffs’ Terms of Service which expressly require that any action to enforce the agreement be brought in the federal or state courts located in Chicago, Illinois, or Miami, Florida defeats any claim of forum shopping or inconvenience.

Defendant's Reply therefore introduces new and misleading assertions concerning a non-party's bankruptcy, challenges Plaintiffs' ownership despite a notarized and recorded copyright transfer, and expands his venue arguments well beyond the scope of his Motion. Plaintiffs submit this Sur-Response solely to correct the record and to ensure that the Court's consideration of the pending motion proceeds based on accurate and complete information.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court accept and consider this Sur-Response as part of the record, disregard the new and improper arguments raised for the first time in Defendant's Reply, and grant such other and further relief as this Court deems just and appropriate.

Respectfully submitted,
*/s/Hameed Odunewu*
FlavaWorks Entertainment,
Inc. and Blatino Media, Inc.

By: s/ *Hameed Odunewu*
Hameed Odunewu (ARDC No. 6346462)
FlavaWorks Entertainment, Inc., Blatino Media, Inc.
2705 West Fulton St
Chicago, IL 60612-2003
(240) 918-2785 Telephone
Hameed@flavaworks.com

COPYRIGHT TRANSFER AGREEMENT This Copyright Transfer Agreement ("Agreement") is made and entered into as of July 13, 2022 (the "Effective Date"), by and between:

1. Flava Works, Inc., an Illinois corporation with its principal place of business at 2445 West Harrison St, Chicago, IL 60612 ("Assignor"); and
2. Phillip Bleicher, an Illinois resident with an address at 2445 West Harrison, Chicago, IL 60612 ("Assignee").

RECITALS WHEREAS, Assignor is the legal and rightful owner of certain copyrights, including those listed in Addendum A attached hereto (the "Copyrights"); and WHEREAS, Assignor desires to transfer, assign, and convey to Assignee all of its rights, title, and interest in and to the Copyrights; and WHEREAS, Assignee desires to acquire all rights, title, and interest in and to the Copyrights;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. ASSIGNMENT OF COPYRIGHTS 1.1 Transfer of Rights. Assignor hereby irrevocably assigns, transfers, and conveys to Assignee all of its rights, title, and interest in and to the Copyrights, including but not limited to all rights to reproduce, distribute, publicly display, publicly perform, and create derivative works, and all other exclusive rights afforded to copyright owners under the U.S. Copyright Act and applicable international laws. 1.2 Ownership and Control. Assignee shall have the sole and exclusive ownership of the Copyrights, including the right to register, enforce, sell, license, and otherwise exploit the Copyrights in any manner and in any medium now known or hereafter developed.

2. CONSIDERATION 2.1 The Parties agree that the transfer of the Copyrights is made in exchange for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

3. REPRESENTATIONS AND WARRANTIES 3.1 Authority. Assignor represents and warrants that it is the sole and exclusive owner of the Copyrights, that it has full authority to enter into this Agreement, and that the Copyrights are free of any liens, claims, or encumbrances. 3.2 No Infringement. Assignor represents and warrants that to the best of its knowledge, the Copyrights do not infringe upon any third-party rights. 3.3 Further Assurances. Assignor agrees to execute any additional documents reasonably required to perfect the transfer of ownership of the Copyrights to Assignee.

4. INDEMNIFICATION 4.1 Assignor agrees to indemnify, defend, and hold harmless Assignee from and against any and all claims, damages, liabilities, costs, and expenses (including reasonable attorneys' fees) arising out of any breach of Assignor's representations and warranties contained in this Agreement.

5. RECORDATION OF TRANSFER 5.1 The parties agree that this Agreement may be recorded with the U.S. Copyright Office to provide constructive notice of the transfer in accordance with 17 U.S.C. § 205.

6. MISCELLANEOUS 6.1 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without regard to conflict of law principles. 6.2 Entire Agreement. This Agreement, including Addendum A, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements, whether written or oral. 6.3 Severability. If any provision of this Agreement is held invalid or unenforceable, the remaining provisions shall remain in full force and effect. 6.4 Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. 6.5 Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

7. NOTARY ACKNOWLEDGMENT State of Illinois County of Cook On this 13 day of July, 2022 before me, a Notary Public in and for the said state, personally appeared Phillip Bleicher and Authorized Representative of Flava Works, Inc., known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained. IN WITNESS WHERE OF, I hereunto set my hand and official seal.

Notary Public Name: DANIEL NELSON Signature: [signature]

My Commission Expires: NOV. 6, 2024

DANIEL H NELSON
Official Seal
Notary Public - State of Illinois
My Commission Expires Nov 6, 2024

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

FLAVA WORKS, INC.

By: [signature]

Name: Phil Bleicher

Title: CEO

Date: 7-13-22

PHILLIP BLEICHER

By: [signature]

Date: 7-13-22

WITNESS: Christian Black

By: [signature]

Date: 07-13-22

## ADDENDUM A
## COPYRIGHT REGISTRATIONS

| Title of Work | Copyright Date | Copyright # |
|---|---|---|
| Bad Boy Detention : F is for Fuck. | 2012 | PA0001797213 |
| Bad Boy Detention 2 - Bareback Sessions. | 2012 | PA0001804965 |
| Bad Boy Detention 3 - Raw Trouble. | 2013 | PA0001861010 |
| BAREBACK BOOTY BANDITS. | 2012 | PA0001917774 |
| BAREBACK BOOTY BANDITS. | 2012 | PA0001832507 |
| BAREBACK BUSSY #1. | 2015 | PA0002037043 |
| BAREBACK BUSSY #2: BREED AND BOUNCE. | 2015 | PA0002025855 |
| BAREBACK STUDY HALL #3: ENCOUNTERS. | 2015 | PA0002037056 |
| BAREBACK STUDY HALL #4: LESSONS LEARNED. | 2015 | PA0002025860 |
| BAREBACK STUDY HALL #5: CUTTING CLASS. | 2015 | PA0002036970 |
| BIG BLACK & BAREBACK. | 2011 | PA0001788831 |
| Big Black Dick 2: Ouch! | 2011 | PA0001802985 |
| Big Black Dick 3: Third Leg. | 2012 | PA0001797171 |
| Big Black Dick 3: Third Leg. | 2012 | PA0001804964 |
| Big Black Dick 4: Inches of Pain. | 2013 | PA0001861008 |
| Big Black Dick. | 2011 | PA0001748153 |
| BLACK BAREBACK COLLEGE #1. | 2016 | PA0002037057 |
| BLACK IN WHITE #2 INTERRACIAL BAREBACK. | 2016 | PA0001993086 |
| BLACK IN WHITE. | 2012 | PA0001841887 |
| Castro 2 : the fuck video. | 2005 | PA0001294214 |
| Castro behind the photoshoot. | 2005 | PA0001294212 |
| Castro reloaded. | 2005 | PA0001294217 |
| Chino in the Raw. | 2009 | PA0001668277 |
| Cocoboyz.com 2010. | 2010 | VA0001861560 |
| COCODORM RAW #1. | 2015 | PA0002025848 |
| COCODORM RAW #2: Skeet & Eat. | 2015 | PA0002036972 |
| COCODORM RAW #3: Fucking for Coins. | 2015 | PA0002037060 |
| Cocodorm.com 2010. | 2010 | VA0001861558 |
| CODY KYLER'S PINGA PARADISE #2. | 2010 | PA0001737150 |
| Cody Kyler's Pinga Paradise. | 2009 | PA0001668281 |
| DOMINANT RAW TOPS #4:Up in the Guts! | 2013 | PA0001841878 |
| DOMINANT RAW TOPS #7:Man Milk. | 2014 | PA0002036969 |
| Dominant Raw Tops 3: Nut up or Shut up! | 2012 | PA0001803007 |
| Dominant Raw Tops 3: Nut up or Shut up! | 2012 | PA0001804962 |
| Dominant Raw Tops. | 2011 | PA0001748151 |
| Dorm life : no. 3. | 2005 | PA0001298415 |
| Dorm life : no. 4. | 2005 | PA0001298397 |
| Dorm life : no. 6. | 2005 | PA0001298401 |
| Dorm life : no. 7, Hot & creamy. | 2005 | PA0001298403 |
| Dorm life 1 & 2. | 2005 | PA0001295163 |
| Dorm Life 12 - Dick Addiction. | 2008 | PA0001764960 |
| Dorm Life 12 : Dick Addiction. | 2008 | PA0001635732 |
| Dorm Life 13 - Skipping Class for Ass. | 2008 | PA0001764946 |
| Dorm Life 14 - The Dick Down. | 2009 | PA0001668240 |
| Dorm Life 15 - After School Fuck Sessions. | 2009 | PA0001668343 |
| Dorm Life 16 : Fucking For Extra Credit. | 2009 | PA0001666879 |

EXHIBIT A

**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

FLAVAWORKS ENTERTAINMENT, INC.,
BLATINO MEDIA, INC.,

Plaintiffs,

vs.

**CASE NO.: 1-24-cv-09725**
Honorable Franklin U. Valderrama
Magistrate: Honorable Appenteng

JOHN DOES, et al., including
CHRISTOPHER LARINO and
MICHAEL SHANE GORDON, et al,

Defendants.
______________________________/

**MOTION FOR AN INTERDISTRICT TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA OR DISMISSAL.**

Now comes the Defendant, Mr. Michael Shane Gordon, by and through his attorney, Mr. Michael P. Simkus, pursuant to 28 U.S.C. § 1400(a) and 28 U.S.C. § 1404(a), and hereby respectfully moves this Court for an Interdistrict Transfer from the Northern District of Illinois to the United States District Court for the Northern District of Georgia, dismissal or for relief this court deems just.

The Court should grant the Interdistrict Transfer to the Northern District of Georgia or dismiss this lawsuit because:

A. **This Defendant is a resident and domiciled in Georgia**.
B. **Plaintiffs Can Never Exercise Personal Jurisdiction over this Defendant in the Northern District of Illinois.**
C. **Transfer to the United States District Court for the Northern District of Georgia is in the best *Interests of Justice***.
D. **Plaintiffs' Fourth Amended Complaint is fatally deficient and cannot be cured against this Defendant, and this lawsuit must be transferred to the United States District Court for the Northern District of Georgia or dismissed.**

In support of this Motion, the Defendant states as follows:

1. Plaintiff filed this copyright infringement action in the United States District Court for the Northern District of Illinois and obtained service upon the Defendant on July 18, 2025, in Alpharetta, Georgia.
2. The United States District Courts have original jurisdiction over this copyright infringement action pursuant to 28 USCS § 1338.

**A. <u>This Defendant is a resident of Georgia.</u>**

1. For copyright infringement actions, 28 U.S.C. § 1400(a), provides:

"Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs *may be instituted in the district in which the defendant or his agent resides* or may be found." [Emphasis added.]

2. The Defendant is domiciled in and a resident of Alpharetta, Georgia. [Attached as Exhibit 1 is the Affidavit of the Defendant, Mr. Michael Shane Gordon, dated September 4, 2025. Please see Exb. 1 ¶9.]
3. Plaintiffs fail to meet the "residency" requirement of 28 U.S.C. § 1400(a) for this Defendant. Further, pursuant to 28 U.S.C. § 1391(c), for venue purposes, the Defendant "…shall be deemed to reside in the judicial district in which that person is domiciled." The United States District Court for the Northern District of Georgia is where the Defendant is domiciled, and therefore, a resident.

**B. <u>Plaintiffs Can Never Exercise Personal Jurisdiction over this Defendant in the Northern District of Illinois.</u>**

1. Plaintiffs can never exercise personal jurisdiction in the United States District Court for the Northern District of Illinois over this Defendant for the following reasons:

a. The Defendant does not maintain a residence, a place of business or have any connection within the Northern District of Illinois. [See Exb.1 ¶4.]

b. The Defendant has never conducted any business or otherwise availed himself of the benefits of the Northern District of Illinois. [See Exb.1 ¶5.]

c. The Defendant has never entered into any service agreement with the Plaintiffs nor agreed to any clause that mandated jurisdiction be within the Northern District of Illinois. [See Exb.1 ¶6.]

d. The Defendant has never agreed to be bound by any Terms and Conditions alleged by the Plaintiffs. [See Exb.1 ¶6.]

e. The Defendant has not consented to personal jurisdiction in the Northern District of Illinois. [See Exb.1 ¶7.]

f. The Defendant is a licensed attorney to practice law in Georgia and is not licensed in any other jurisdiction in the United States. The Defendant has not appeared in any court room outside of the State of Georgia. [See Exb.1 ¶8.]

g. The Defendant has never represented any client for a matter in any United States District Court District, let alone a lawsuit for a client in the Northern District of Illinois. [See Exb.1 ¶11.]

2. Plaintiffs can never allege facts sufficiently, and in good faith, that this honorable court can exercise personal jurisdiction of this Defendant in the Northern District of Illinois.[1]

[1] This Defendant reserves the right to file a Rule 12(b)(6) Motion to Dismiss as the Fourth Amended Complaint is bereft of adequate facts that sufficiently provide adequate notice nor establish a lawsuit for copyright infringement. A Rule 12(b)(6) motion would establish that the Fourth Amended Complaint fails to allege that copyrighted works have been registered by the Plaintiffs with the United States Copyright Office. Plaintiffs make a vague and ambiguous assertion that Plaintiff Flava Works Entertainment "has applied for and has registered various copyrights for its works." See, Fourth Amended Complaint, p. 3, ¶ 14. That does not satisfy this Court's subject matter jurisdiction. 17 U.S.C. § 441(a). [The United States Supreme Court in *Fourth Estate Public Benefit Corporation v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), interpreted the phrase "registration has been made" in 17 U.S.C. § 411(a) to mean that the Copyright Office must have completed the registration process, rather than merely the submission of a copyright application by the claimant. The Supreme Court clarified that the act of registration is completed when the Copyright Office registers the copyright, not when the application is submitted. Thus, a copyright infringement lawsuit can only proceed after the Copyright Office has acted on the registration application. "The burden of establishing federal jurisdiction is on the party asserting such jurisdiction, and the jurisdictional basis must be clear from the face of the complaint itself." See, *Burns v. Rockwood Distributing Co.*, 481 F. Supp. 841, 848 (N.D. Ill. 1979).]

C. **Transfer to the United States District Court for the Northern District of Georgia Is in the best *Interests of Justice.***

1. Transfer is appropriate as 28 U.S.C. § 1404(a) states when: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

2. First, Plaintiffs could have only filed its lawsuit against this Defendant in the United States District Court for the Northern District of Georgia. Second, in the interest of justice, the court should transfer to the United States District Court for the Northern District of Georgia for the following reasons:

   a. The Defendant has been diagnosed with and currently suffers from various physical and anxiety conditions which would make long-distance travel to the Northern District of Illinois for court proceedings painful, burdensome, and expensive. [See Exb.1 ¶12.]

   b. The Defendant also suffers from a reduced immune system resistance due to autoimmune disease, psoriatic arthritis, anxiety disorder, and agoraphobia. [See Exb.1 ¶12.]

   c. Transferring this case to the United States District Court for the Northern District of Georgia would serve the interests of justice and the convenience of the parties and witnesses, as the Defendant and potential witnesses are located within the jurisdiction of Northern District of Georgia.

D. **Plaintiffs Fourth Amended Complaint is fatally deficient and cannot be cured against this Defendant, and must be transferred to the United States District Court for the Northern District of Georgia or dismissed.**

1. Finally, the Plaintiffs' deficient pleading filed in the Northern District of Illinois procedural defect cannot be cured to meet the residency requirements of 28 U.S.C. § 1400(a) and 28 U.S.C. § 1391(c) against this Defendant.

2. As stated in Footnote 1, Plaintiff, in the Fourth Amended Complaint, failed to properly plead a copyright infringement action.[2]

3. Vis-à-vis this Defendant, Plaintiffs' Fourth Amended Complaint fails to sufficiently allege, and more importantly, Plaintiffs can never allege in good faith:

   a. That this Defendant resides in the Northern District of Illinois.

   b. That this Defendant had continuous and systemic contact with the State Illinois as well as within the Northern District of Illinois.

   c. That this Defendant engaged in a significant act within the State Illinois as well as within the Northern District of Illinois.

---

[2] Plaintiff Flava Works Entertainment, Inc., is a corporation which purports to produce gay adult entertainment works in the forms of DVDs, magazines, websites, pictures, streaming videos, and various other medias. See, Fourth Amended Complaint, p. 3, ¶ 12. Plaintiff Flava Works Entertainment asserts that it has "applied for and has registered *various copyrights for its works*." See, Fourth Amendment Complaint, p. 3, ¶ 14 (*emphasis added*). Plaintiff Flava Works Entertainment neither alleges its ownership of any specifically identifiable US copyright registration, nor provides a copy of a registration attached as an exhibit to the Fourth Amended Complaint.

Plaintiff Blatino Media, Inc., neither alleges to have produced any copyrightable works nor alleges that it has applied for and registered any such works. Plaintiff Blatino Media neither alleges nor provides a copy of any specifically identifiable US copyright registration as an exhibit.

Moreover, Plaintiffs Fourth Amended Complaint fails to state where the copyright infringement occurred, when the copyright infringement occurred, how the copyright infringement occurred and what was specifically infringed.

As an alternative remedy for an interdistrict transfer to the Northern District of Georgia, this court could also enter a Dismissal pursuant to 28 U.S.C. § 1406, which provides that when a case is filed in a district where venue is improper, the district court has the authority to either dismiss the case or transfer it to a district or division where it could have been properly brought, if doing so is in the interest of justice. The Seventh Circuit has clarified that venue is considered improper under § 1406(a) only if it does not meet the requirements of the federal venue statutes. See *In re LimitNone*, LLC, 551. F.3d 572 (7th. Cir 2008).

d. That this Defendant has engaged in acts that satisfy Illinois' long-arm statute such that those acts provide personal jurisdiction over this Defendant in the Northern District of Illinois.

e. That the Plaintiffs' copyright works and interests are situated in the Northern District of Illinois.

f. That the Plaintiffs can plead in another Amended Complaint and attach an executed copy of their Terms and Conditions Agreement between Plaintiffs and this Defendant because no such agreement exists.

g. That the Plaintiffs can plead in another Amended Complaint and attach evidence that this Defendant accessed and agreed to be bound by Plaintiffs' Terms and Conditions because no such evidence exists.

h. That the Plaintiffs can plead in another Amended Complaint that the FlavaWorks' Terms and Conditions are presented on Plaintiffs' website(s) in a manner sufficient to bind users to those Terms and Conditions and such Terms and Conditions were agreed between Plaintiffs and this Defendant because neither such agreement nor such evidence exists.

**WHEREFORE**, for the reasons stated above, the Defendant Michael Shane Gordon respectfully requests that this Honorable Court grant an interdistrict transfer of this lawsuit from the United States District Court for the Northern District of Illinois to the United States District Court for the Northern District of Georgia, dismissal, or for relief the court deems just.

Dated: September 5, 2025.

*(s) Michael P. Simkus*
**FS CORPS, Professional Corporation**
MICHAEL P. SIMKUS, ESQ.
4320 WINFIELD ROAD SUITE 200
WARRENVILLE, ILLINIOIS 60555

Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

FLAVAWORKS ENTERTAINMENT, INC.,
BLATINO MEDIA, INC.,

Plaintiffs,

vs.

**CASE NO.: 1-24-cv-09725**
Honorable Franklin U. Valderrama
Magistrate: Honorable Appenteng

JOHN DOES, et al., including
CHRISTOPHER LARINO and
MICHAEL SHANE GORDON, et al,

Defendants.
______________________________/

**AFFIDAVIT OF MICHAEL SHANE GORDON**

STATE OF GEORGIA

I, MICHAEL SHANE GORDON, residing at 14108 Masters Way, Alpharetta, Georgia, being of legal age and competent to testify, hereby declare under oath as follows:

1. I am the Defendant in the above-captioned matter and have personal knowledge of the facts stated within this affidavit.

2. This affidavit is made in support of the Defendant's Motion to Transfer Venue pursuant to 28 USCS § 1404 on the grounds that the Defendant does not reside in the Northern District of Illinois and resides in the Northern District of Georgia where venue is appropriate.

3. I live outside the jurisdiction of the Northern District of Illinois.

4. I do not maintain a residence, a place of business, or have any connection to the Northern District of Illinois.

5. I have not conducted any business within or otherwise availed myself of the benefits of the Northern District of Illinois.

6. I have neither entered into any service agreement with the Plaintiffs nor agreed to any clause that mandated jurisdiction be within the Northern District of Illinois. I also have never agreed to be bound by any Terms and Conditions alleged by the Plaintiffs.

7. In short, I have not consented to the personal jurisdiction of the Northern District of Illinois.

8. I am a licensed attorney to practice law in Georgia and am not licensed in any other jurisdiction in the United States. I provide legal services to my employer's clients. I have not appeared in any court room outside of the State of Georgia.

9. My primary residence is located at 14108 Masters Way, Alpharetta, Georgia, which is within the jurisdiction of Northern District of Georgia.

10. My office is in Alpharetta, Georgia, which is also within the jurisdiction of Northern District of Georgia.

11. I have never represented any client for a matter in any United States District Court District, let alone a lawsuit for a client in the Northern District of Illinois.

12. I have been diagnosed with and currently suffer from various physical and anxiety conditions which would make long-distance travel to the Northern District of Illinois for court proceedings painful, burdensome, and more costly. These conditions include reduced immune system resistance due to autoimmune disease, psoriatic arthritis, anxiety disorder, and agoraphobia.

13. Transferring this case to a District Court which is within the jurisdiction of Northern District of Georgia would serve the interests of justice and the convenience of the parties and witnesses, as the Defendant and potential witnesses are located within the jurisdiction of Northern District of Georgia.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Alpharetta, Georgia on September 4th, 2025.

Michael Shane Gordon

SABAAKRAM NOTARY PUBLIC FORSYTH COUNTY GEORGIA EXPIRES DEC 21, 2026

NOTARY PUBLIC

Subscribed and sworn to before me this 4th day of September 2025.

Exhibit