**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

FLAVAWORKS ENTERTAINMENT, INC.,
BLATINO MEDIA, INC.,
Plaintiffs,

vs.

**CASE NO.: 1-24-cv-09725**
Honorable Franklin U. Valderrama
Magistrate: Honorable Appenteng

JOHN DOES, et al., including
CHRISTOPHER LARINO and
MICHAEL SHANE GORDON, et al,
Defendants.
_____________________________/

**DEFENDANT MICHAEL SHANE GORDON'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT.**

Defendant Michael Shane Gordon, by and through his counsel, respectfully moves this Court to dismiss the Fourth Amended Complaint filed by Plaintiffs FlavaWorks Entertainment, Inc. and Blatino Media, Inc. pursuant to the Federal Rules of Civil Procedure FRCP 8(a)(2), 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), 12(e) and 17(a). In support, the Defendant states:

**First**, pursuant to FRCP 8(a)(2), 12(b)(1), and 12(b)(6), requests a dismissal of any cause of action based upon the Lanham Act. Plaintiffs make only a fleeting reference to the Lanham Act in Plaintiffs' Complaint, ¶ 1, and nothing more. Plaintiffs do not sufficiently plead a Lanham cause of action pursuant to FRCP 8(a)(2), 12(b)(1), and 12(b)(6). Plaintiffs also failed to file separately the required notice of a federal Lanham Act claim pursuant to local rule [LR 3.4].

**Second,** pursuant to 12(b)(6), Plaintiffs Complaint fails to state claims upon which relief can be granted. Counts I through IV consist exclusively of (1) lists of causes of action, elements and definitions, and (2) conclusory legal allegations. Plaintiffs' Complaint is bereft of operative facts that sufficiently provides notice to this defendant and, at best, merely creates the *suspicion* of a legally cognizable right of action. See, *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 545 (2007), citing, 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235—236 (3d Ed. 2004). Plaintiffs' scant factual allegations do not move their claims "across the line from conceivable to plausible." See, *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009). Alternatively, Plaintiffs' Complaint can also be dismissed for a more definitive statement pursuant to FRCP 12(e) as it does not provide notice what copyright was infringed and when that infringement occurred.

**Third,** discussed below in Section A, **plaintiffs lack standing:** Pursuant to FRCP 12(b)(1), 12(b)(6) and 17(a) because (1) Plaintiffs are not owners or exclusive licensees of the "infringed works" and (2) Plaintiffs do not own the alleged infringement "causes of action."

**Finally,** discussed below in Section B, **Defendant preserves his lack of personal jurisdiction argument:** Pursuant to FRCP 12(b)(2) and 12(b)(3) because (1) there are insufficient contacts for personal jurisdiction vis-à-vis the Illinois long arm statute and (2) the Defendant never consented to a forum-selection clause that was made with a different entity and not these Plaintiffs.

A. **Plaintiffs' Lack of Standing**.

Plaintiffs' Complaint must be dismissed because Plaintiffs are not, and have never been, the owners or exclusive licensees of the "infringed works." Plaintiffs also are not, and have never been, the owners of the copyright infringement "causes of action" related to this Defendant's alleged acts. Please see, 17 U.S.C. § 501(b). Plaintiffs are not the proper parties to bring this lawsuit, and therefore, lack standing.

**1. <u>Plaintiffs are not owners or exclusive licensees of the "infringed works."</u>**

Nowhere in Plaintiffs Complaint, does either Plaintiff allege that it owned the "infringed works." Please see Plaintiffs' Complaint. It was not until this Defendant filed his Motion to Transfer Venue, Plaintiffs then filed a responsive pleading that admitted that the ownership of the "infringed works" changed hands on July 13, 2022 and that Philip Bleicher (herein "Bleicher") gained ownership. (Attached as **Exhibit A** is a copy of the Plaintiff's Sur-Reply to Defendant's Motion to Transfer Venue and the "Copyright Transfer Agreement" dated July 13, 2022,) Importantly, **Exhibit A** confirms that these Plaintiffs have **never** been "owners."

Furthermore, the "Copyright Transfer Agreement" confirmed that prior to July 13, 2022, a purported owner of the "infringed works" was an entity named Flavor Works, Inc.. As a result of that disclosure, two considerations arise: first, is "Flavor Works, Inc." the same "Flavor Works, Inc." that filed a Chapter 7 Bankruptcy petition on February 19, 2025 in the Bankruptcy Court for the Northern District of Illinois, Case Number 25-01964? If so, then any claim against this Defendant for infringement for acts prior to July 13, 2022, can only be pursued in the Chapter 7 Bankruptcy and not here. That is why it is critically important, as noted above, that pursuant to 12(b)(6) and 12(e), Plaintiffs identify what this Defendant infringed and when.

The second consideration that arises from the "Copyright Transfer Agreement" disclosure, is that if the entity was not the "Flava Works, Inc." that filed the Chapter 7 Bankruptcy, then which "Flava Works, Inc." entity passed ownership rights to Bleicher on July 13, 2022? According to the Illinois Secretary of State's Business Office there have been three "Flava Works, Inc." entities: (1) a "Flava Works, Inc." that incorporated in Illinois on Nov. 3, 2004, and dissolved on Jan. 2, 2007; (2) a "Flava Works, Inc." that incorporated in Florida and qualified to conduct business in Illinois on April 5, 2010, but revoked on Sept. 12, 2014; and (3) a "Flava Works Inc." incorporated in

Illinois on April 16, 2015, and that was not in good standing on July 13, 2022. None of those three entities could have legally passed anything to Bleicher, let alone ownership, an assignment or causes of action. *Arguendo*, depending on the date of the "infringement," either Bleicher, a "Flavor Works, Inc." entity or some other owner may be the proper party to assert a copyright infringement claim against this Defendant. Not these two Plaintiffs as discussed below.

Clearly, these two Plaintiffs have never been "owners" of the "infringed works." Discussed below, neither Flava Works Entertainment nor Blatino Media are "exclusive licensees" of the "infringed works," and subject to dismissal pursuant to FRCP 12(b)(1), 12(b)(6) and 17(a).

(a.) Plaintiff FlavaWorks Entertainment

Plaintiff FlavaWorks Entertainment is not the beneficial owner of an exclusive right in the "infringed works." In the responsive pleading, Plaintiffs stated that Bleicher deputized FlavaWorks Entertainment to bring infringement suits for copyrights owned by him.

In that responsive pleading, Plaintiffs admitted that pursuant to a July 13, 2022 Copyright Transfer Agreement, that all right, title, and interest in the copyright works, trademarks, customer databases, and digital content was owned or controlled by "Flava Works, Inc." and were assigned to Bleicher, a non-party Illinois resident. See, **Exhibit A,** pp. 2—3. Further, that in March 2024, Bleicher executed a Copyright Enforcement Services Agreement, appointing Plaintiff FlavaWorks Entertainment, Inc. as his exclusive "enforcement agent."

Plaintiffs made the following admission in that pleading: *"FlavaWorks Entertainment, Inc. is the authorized enforcement agent."* See, **Exhibit A**, page 3.

The Copyright Act, see 17 U.S.C § 501(b), forbids copyright holders from utilizing third parties to bring suit on their behalf. "We do not believe the Copyright Act permits holders of rights

under copyrights to choose third parties to bring suits on their behalf. While Fed. R. Civ. P. 17(a) ordinarily permits the real party in interest to ratify a suit brought by another party, … the Copyright Law is quite specific in stating that only the 'owner of an exclusive right under the copyright may bring suit.'" See, *Photofile, Inc. v. Graphicomp Sys.*, 92 C 8414, 1993 WL 375769, at *3 (N.D. Ill. Sept. 22, 1993) quoting *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982).

Bleicher cannot deputize a third party, FlavaWorks Entertainment, Inc., as his agent for enforcement of his copyrights. See, *Photofile, Inc.*, supra. As stated above, if the infringement occurred after the July 13, 2022 Copyright Transfer Agreement, then Bleicher may be the only plaintiff who may bring this action. However, if the infringing acts occurred prior to July 13, 2022, then "Flava Works, Inc.," is the only plaintiff who may bring this action, assuming it still exists as a legal entity. Flava Works Entertainment, Inc. cannot establish standing to bring this lawsuit as it is neither an owner nor an exclusive licensee. Therefore, Flava Works Entertainment, Inc., pursuant to FRCP 12(b)(1), 12(b)(6) and 17(a), should be dismissed for a lack of standing.

(b.) Blatino Media.

Blatino Media is also not the beneficial owner of an exclusive right in the "infringed works." Plaintiffs' Complaint alleges that only FlavaWorks Entertainment Inc. produces and registers copyrights for its works. See, Plaintiffs' Complaint, ¶¶ 12—15.

For the reasons below, Blatino Media is not an exclusive licensee. As a non-exclusive licensee, Blatino Media is not entitled to complain about any alleged infringement of the copyright. See, *HyperQuest, Inc.*, 632 F.3d at 382, wherein the Seventh Circuit interpreted 17 U.S.C. § 501(b)

to allow the holder of an exclusive license to distribute a particular work can sue under the Copyright Act, while the holder of a non-exclusive license may not.

Plaintiffs' admission that Bleicher executed a Licensing and Content Publishing Agreement to grant Blatino Media "exclusive rights to publish and distribute" the copyrighted works (**Exhibit A, Page 2**) is directly contradicted by Plaintiffs' Fourth Amended Complaint. "Plaintiff distributes its adult entertainment through **various distributors and licensees**, as well as through its websites including FlavaFlix.com, CocoDorm.com, Thugboy.com, PapiCock.com and RawRods.com among others." See, Plaintiffs' Complaint, ¶ 13, emphasis added.

First, the phrase, "various distributors and licensees," in plain English, contradicts any notion of "exclusiveness." Second, the Plaintiffs' Complaint, referenced websites in the allegations of Plaintiffs' Complaint, ¶ 13. Those websites reveal that any material found on the sites may not be distributed "*without the prior express permission of FlavaWorks Entertainment, Inc.*" Those websites did not state Blatino Media and directly contradicts the statement made in the responsive pleading to the Motion to Transfer Venue that Blatino Media was granted an *exclusive* license to publish and distribute Bleicher's works. At most, Blatino Media has only a non-exclusive license, which means that it does not have standing or ability to maintain this action. See, *HyperQuest, Inc.*, supra, and is subject to dismissal pursuant to FRCP 12(b)(1), 12(b)(6) and 17(a).

**2. <u>These Plaintiffs Do Not Own the copyright infringement "causes of action."</u>**

While the Plaintiffs' Complaint fails to state what copyright was infringed and when the copyright infringement occurred, we now also know from Exhibit A, that neither Bleicher nor these two Plaintiffs own any copyright infringement "causes of action" for infringement that occurred prior to July 13, 2022,. For infringement acts prior to July 13, 2022, only "Flava Works,

Inc." could bring a copyright infringement action against this Defendant because "FlavaWorks, Inc." did not assign any copyright infringement actions to Bleicher.

And, as stated above, for copyright infringement acts that occurred after July 13, 2022, only Bleicher may pursue and not these two Plaintiffs. As a result, these two Plaintiffs lack standing and must be dismissed pursuant to FRCP 17(a).

FRCP 17(a), provides that "'[e]very action must be prosecuted in the name of the real party in interest and 'requiring that the complaint be brought in the name of the party to whom that claim 'belongs' or the party who 'according to the governing substantive law, is entitled to enforce the right.'" See, *Monco v. Zoltek Corp.*, 397 F. Supp. 3d 1165, 1178 (N.D. Ill. 2019), quoting *Rawoof v. Texor Petroleum Co., Inc.*, 521 F. 3d 750, 756 (7th Cir. 2008).

FRCP 17(a) is "a codification of the principle that a litigant cannot sue in federal court to enforce the rights of third parties – in other words, a prudential limit on standing." See, *Act II Jewelry, LLC v. Wooten*, 301 F. Supp. 3d 905, 911 (N.D. Ill. 2018). Plaintiffs must "possess the right sought to be enforced and not necessarily [be] the person who will ultimately benefit from the recovery." See, Id. at 910, quoting *Checkers, Simon & Rosner v. Lurie Corp.*, 864 F.2d 1338, 1343 (7th Cir. 1988).

The Copyright Act, moreover, Section 501(b), restricts the right to institute an action for infringement to "he or she [who] is the owner of it" at the time of infringement. This right to sue is a piece of intangible property known as a *chose in action*. See, for example, *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 934 (7th Cir. 2005), fn. 2, approving a definition of chose in action as "a personal right not reduced into possession but recoverable by suit in law. It is a property right characterized as personalty…."

Infringement "choses in action" are separate from the copyrights themselves and do not automatically transfer along with ownership of the copyrights. "The general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the *legal title* to the patent *during the time of the infringement*." See, *Ziklag IP LLC v. Netflix, Inc.*, 24-CV-01789, 2025 WL 904311, at *4 (N.D. Ill. Mar. 25, 2025), quoting *Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991), emphasis in original. "[I]t is a great mistake to suppose that the assignment of a patent carries with it a transfer of the right to damages for an infringement committed before such assignment." See, Id., quoting *Moore v. Marsh*, 74 U.S. 515, 521 (1868). "Thus, the conveyance of the patent does not normally include the right to recover for injury occurring to the prior owner." Id., quoting *Minco, Inc. v. Combustion Engr., Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996). Importantly, an assignment agreement that contains only a "bare reference to all right, title, and interest **<u>does not</u>** normally transfer the right to sue for past infringement." See, Id. Emphasis added.

A review of the Copyright Transfer Agreement did not transfer to Bleicher, or these two Plaintiffs, any copyright infringement "causes of actions" that arose before July 13, 2022. See, **Exhibit A**. Because Plaintiffs do not state when the alleged acts of Defendant occurred, this Court should not speculate when the copyright infringement "causes of action" arose and dismiss this action as non-justiciable for failure to state a claim pursuant to FRCP 12(b)(1), 12(b)(6) and 17(a).

**B. <u>This Defendant renew his personal jurisdiction argument, and this lawsuit requires dismissal because the Court cannot exercise personal jurisdiction and proper venue over this Defendant via (1) the Illinois long arm statute or (2) Defendant's alleged consent to a forum-selection clause in a contract with a non-party.</u>**

"[W]hen a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction over the defendant…. The court may consider affidavits or

other evidence in opposition to or in support of its exercise of jurisdiction. '[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction; the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.' We resolve factual disputes in the plaintiff's favor, but unrefuted assertions by the defendant will be accepted as true." See, *Livingston v. Hoffman-La Roche Inc.*, 293 F. Supp. 3d 760, 764 (N.D. Ill. 2018), internal citations omitted.

The Copyright Act also does not provide for nationwide service of process; therefore, personal jurisdiction in this action is controlled by Illinois law. See, Fed. R. Civ. P. 4(k)(1)(A). Since this Defendant is not domiciled in Illinois, Plaintiffs must establish that this Court has the power to exercise jurisdiction over him pursuant to either (1) the Illinois long-arm statute, or (2) Defendant Gordon's voluntary consent to the personal jurisdiction of Illinois.

**1. This Court may not exercise personal jurisdiction over Defendant pursuant to the Illinois long arm statute.** [1]

Under the Illinois long-arm statute, personal jurisdiction can be general or specific. See, *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). General jurisdiction requires "continuous and systematic contacts" with Illinois. See, Id. at 425—26, quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415—16 (1984). Specific jurisdiction requires defendant to have "purposefully directed his activities at [Illinois] or purposefully availed himself of the privileges of conducting business in that state," and Plaintiffs' injuries must arise "out of the defendant's forum-related activities." See, *Tamburo v. Dworkin*, 601 F. 3d 693, 702 (7th Cir. 2010). The fact that the alleged harm to Plaintiffs may have been occurred in the State of Illinois is not

[1] Plaintiffs perfunctorily refer to the long arm statute (Plaintiffs' Complaint, ¶ 10); however, Plaintiffs abandon this basis and fail to allege any facts to support personal jurisdiction pursuant to the long arm statute.

sufficient for specific jurisdiction. See, *Labtest Int'l, Inc. v. Ctr. Testing Int'l Corp.*, 766 F. Supp 2d 854, 861 (N.D. Ill. 2011), finding in internet infringement case that "harm to the plaintiff in the forum is not enough to establish [specific] jurisdiction." Alleged acts which occurred on the Internet do not subject a defendant to specific jurisdiction in every state wherein the Internet can be accessed. See, *On the Cheap, LLC v. Does 1—5011*, 280 F.D.R. 500, 505 (N.D. Cal. 2011)(Court rejected argument that BitTorrent users subject themselves to jurisdiction in every state because defendant must purposefully avail itself of privilege of conducting activities in forum state.)

Defendant is domiciled in and a resident of Alpharetta, Georgia. [Attached hereto as **Exhibit B** is a copy of Defendant's Motion for Interdistrict Transfer to the United States District Court for the Northern District of Georgia or Dismissal]. Defendant does not maintain a residence, a place of business, or have any other systematic or continuous connection to the Northern District of Illinois. See, **Exhibit B**, ¶ 4. Defendant has never conducted any business in or otherwise availed himself of the benefits of the Northern District of Illinois. Id. at ¶ 5. Plaintiffs' allegation that Defendant participated in peer-to-peer file-sharing networks (Plaintiffs' Complaint, ¶ 16) fails to establish general or specific personal jurisdiction over Defendant. Therefore, this Court lacks personal jurisdiction over Defendant pursuant to the Illinois long arm statute.

### 2. **This Court may not exercise personal jurisdiction and venue based on Defendant's alleged consent to a forum-selection clause in a contract with a non-party.**

Plaintiffs conflate and confuse an assignment of "Flava Works, Inc.'s" copyrights with an assignment of "Flava Works, Inc.'s" rights and obligations in the Terms and Conditions Agreement. Those are two different things: one does not run with the other.

This Defendant has never accepted a Terms and Conditions Agreement with non-party "Flava Works, Inc." Plaintiffs cannot enforce a forum-selection clause contained in a contract with

a nonparty. Any contractual obligation to consent to this forum would be enforceable only in suits between non-party Flava Works, Inc. and Defendant. Since neither Plaintiff was a party to that Agreement, Plaintiffs must bring this action pursuant to 28 U.S.C. § 1400(a), i.e., in Georgia.

Defendant is not now, nor has he ever been, a member of Plaintiffs' website. Defendant has never agreed to be bound by any Agreement with these Plaintiffs. See, Defendant's Motion for Transfer, **Exb. B, ¶ 6**. Defendant is not user "hubrys" who allegedly joined "RawRods.com." RawRods.com's Agreement, like any other contract,[2] would be enforceable only between the parties to that contract, i.e., user "hubrys" and "Flava Works, Inc.," neither of which is involved in here. "This User Agreement constitutes a legal agreement between you and Flava Works[3] and spells out the terms and conditions to which users of any Flava Works Site are expected to adhere." See, Plaintiffs' Response in Opposition, Exb. A, TOS.

Plaintiffs admit that user "hubrys," who they speculate to have been Defendant[4], only accessed RawRods.com as a "free user." See, Plaintiffs' Response in Opposition, page 2. Defendant, as an alleged non-paying member, would not have affirmatively manifested consent to the Agreement. The Court in *Hamera v. Best Buy Co. Inc.*, 790 F. Supp. 3d 664, 667 (N.D. Ill. 2025) provides a summary of Illinois law regarding the enforceability of a website's Terms and Conditions: "Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement. One way that a website can do that is by using "clickwrap" agreements. A website, for example, might be able to bind users to

---

[2] "A website's terms of service is a contract." See, *Bogard v. TikTok Inc.* 725 F. Supp. 3d 897, 904 (S.D. Ind. 2024).
[3] "Flava Works" is defined by the Agreement as referring only to non-party Flava Works, Inc. See, Exb.A.
[4] Defendant's cursory Internet search resulted in several dozen websites containing users using the username "hubrys," none of which are related to Defendant.

a service agreement by placing the agreement…or a clearly labeled hyperlink to the agreement, next to an 'I Accept' button that unambiguously pertains to that agreement. On the other hand, a website generally will not have provided reasonable notice if it uses 'browser wrap' agreements—which provide veiled notice to customers that mere use of the website constitutes agreement to various terms and conditions. Indeed, "browser wrap" agreements typically are not enforced."

Free users were only required to click a "Trial Membership" button, not an "I agree to the Terms and Conditions" button. This is the kind of passive "acceptance" described as "browserwrap" which the *Hamera* court explains are not enforced. Despite Plaintiffs' allegations otherwise (Plaintiffs' Response in Opposition, page 2), non-paying visitors were not required to affirmatively click "I agree to Terms and Conditions and Legal Age" before viewing the free preview content. Only paid memberships required an affirmative manifestation of consent to the Agreement.

Plaintiffs admit that user "hubrys" never had access to Flava Works, Inc.'s copyrighted works, since user "hubrys" was only a free member of Flava Works, Inc.'s website[5]. Plaintiffs admit that such a "free user" would only have access to limited preview content. See, **Exhibit A**, P.2. *Arguendo*, if Defendant allegedly infringed Plaintiffs' Works, then such infringement did not arise out of a free membership to RawRods.com.

Because Defendant's alleged infringement could not have arisen from his alleged free membership, Plaintiffs' application of *Flava Works v. Rossi*, 12-CV-1885, 2013 WL 1337326 (N.D.

[5] This Court should not presume that Plaintiffs accurately present the business records of a different legal entity over which they did not at the time exercise control. Plaintiffs refer to the server logs of RawRods.com as "Plaintiffs' server logs;" however, such logs would have existed nine (9) years before Plaintiffs creation. Similarly, the Agreement has an effective date of January 1, 2011; again, nine (9) years before Plaintiffs existed.

Ill. Mar. 29, 2013) to this dispute is inapposite. In *Rossi*, Flava Works, Inc.,[6] as a party to the Agreement and the plaintiff bringing the action, could enforce its Agreement against a paid member who consented to the forum-selection clause as a means to gain access and download copyrighted works. See, Id. at *1. The Court held that since the paid member obtained the copyrighted works through his membership, his infringing acts related to and arose out of the contractual relationship between Flava Works, Inc. and himself.

> When Rossi chose to become a paid member of Flava Works' websites, he agreed to abide by specific terms and conditions included in the disputed Agreement. Among other things, Rossi agreed not to copy and distribute Flava Works's copyrighted videos. I[n] fact, had Rossi not consented to the terms of the Agreement, he would[n't] have been allowed access to the copyrighted videos and *there would be no basis for the instant lawsuit*. Flava Works' copyright infringement claims stem directly from Rossi's alleged violation of the Agreement and thus the forum selection clause is applicable to this case. Id. at *4, emphasis in original.

Simply, the Court enforced the forum-selection clause in *Rossi* specifically because the paid subscriber's access to the copyrighted videos was gained solely through his consent to the Agreement as a purchase of paid membership. If the paid member hadn't obtained copyrighted works through a paid membership, then there would have been no basis for the lawsuit.

The rights and obligations of a contract do not apply to infringing acts that do not arise out of that contractual relationship, such as where the copyrighted work is obtained from elsewhere outside the Agreement. See, for example, *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996), explaining that a stranger who found a CD-ROM of ProCD's copyrighted work on the street would not be bound by the shrinkwrap license agreement between ProCD and its paying customer who tore opened the shrinkwrap. The stranger is not a party to the shrinkwrap agreement, and his

---

[6] Neither Plaintiff FlavaWorks Entertainment nor Plaintiff Blatino Media were a party to Flava Works, Inc.'s Agreement and did not participate in *Rossi*. Flava Works, Inc. was a party to its Agreement; however, is not participating in the action at bar.

access to the copyrighted work did not arise out of a contractual relationship with ProCD. If ProCD were to bring an action for infringement against the stranger, then it must do so in a forum complying with 28 U.S.C. § 1400(a).

Since user "hubrys" was not a paid member of RawRods.com with access beyond limited preview content, the Works represented by registration numbers PAU 4-192-666, PA 0002025857, or PA 0001687480 could not have been obtained through his alleged free access to Plaintiffs' website. Logically, if Defendant was user "hubrys," then Defendant would have had to obtain the Works elsewhere.[7] If access to the Works was not obtained through Defendant's consent to the Agreement, then the alleged infringing acts did not arise out of his contractual relationship with Plaintiffs. If Plaintiffs cannot enforce their Agreement against Defendant, then their copyright infringement action must be brought pursuant to 28 U.S.C. § 1400(a), i.e., in a Georgia court.

Defendant was never a member, paid or otherwise, of Plaintiffs' websites. See, Defendant's Motion for Transfer, Exb. B, ¶¶ 6—7. Defendant has never participated in a "torrent swarm" containing Plaintiffs' Works. However, even if this Court must take Plaintiffs' allegations as true, Plaintiffs cannot allege that Defendant's access to the Works arose out of his alleged free membership to RawRods.com. Therefore, any alleged infringing acts could not have arisen out of Defendant's alleged contractual relationship with Flava Works, Inc. Plaintiffs' allegations, if presumed to be true, merely establish that possibly non-party Flava Works, Inc. may sue Defendant in *a Court*, but do not support it suing in *this Court.*

---

[7] Additionally, of the 46 named copyrighted works listed on Exhibit A attached to Plaintiffs' Sur-Response, 23 works were authored and/or registered after 2011. Therefore, such Works could not have been obtained by user "hubrys" through his access to RawRods.com in November of 2011.

Flava Works, Inc. is not a party to this dispute. This Court cannot presume that Plaintiffs are parties to Flava Works, Inc.'s Agreement. Any contractual relationship arising out of the Agreement does not run with the copyrights; therefore, Plaintiffs alleged subsequent ownership of the Works does not create a contractual relationship between Plaintiffs and Defendant. Even if such contractual relationship did exist, Defendant's alleged infringing acts did not arise out of that contractual relationship. Therefore, *Rossi* does not apply to this action.

Plaintiffs must bring their action pursuant to 28 U.S.C. § 1400(a). Since Defendant is not a resident of Illinois and not otherwise subject to the personal jurisdiction and venue of an Illinois court, Plaintiffs action must be brought within the District Court for the Northern District of Georgia, encompassing Defendant's residence in Alpharetta, Georgia. Plaintiffs' action must be dismissed pursuant to FRCP 12(b)(1), 17(a), 12(b)(2), 12(b)(3), and 12(b)(6).

**WHEREFORE**, for the reasons stated above, Defendant Michael Shane Gordon respectfully requests that this Honorable Court grant his motion to dismiss for the reasons stated above or for relief the court deems just.

Dated: August 5, 2026.

*(s) Michael P. Simkus*
**Simkus Law Firm, Professional Corporation**
MICHAEL P. SIMKUS, ESQ.
265 Stonegate Road, Suite 104
ALGONQUIN, ILLINIOIS 60102

Case: 1:24-cv-09725 Document #: 151-1 Filed: 08/13/25 Page 1 of 5 PageID #:5245

**EXHIBIT A**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| FlavaWorks Entertainment, Inc., | ) | |
| Blatino Media, Inc., | ) | |
| Plaintiff, | ) | Case No. : 1:24-cv-09725 |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| John Doe 1, et al | ) | |
| Defendants. | ) | |

PLAINTIFFS' SUR-RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE OR DISMISS

NOW COME the Plaintiffs, FlavaWorks Entertainment, Inc. and Blatino Media, Inc. ("Plaintiffs"), by and through their undersigned counsel, and pursuant to leave of Court, submit this Sur-Reply in Opposition to Defendant's Motion to Transfer Venue or Dismiss (Dkt. 122). This Sur-Response is necessary to correct the record and address new factual assertions and legal arguments that Defendant improperly raised for the first time in his Reply (Dkt. 148).

Defendant's Reply references a supposed "Flava Works bankruptcy," an assertion that is both factually inaccurate and legally irrelevant. The entity referred to as "Flava Works, Inc." is not a party to this case. The actual Plaintiffs FlavaWorks Entertainment, Inc. and Blatino Media, Inc. are both active Illinois corporations in good standing. Neither has ever been a debtor in any bankruptcy proceeding. Defendant's newly raised and misleading statement serves only to confuse the record and misrepresent Plaintiffs' standing and financial viability, and it should be disregarded entirely.

Defendant also misrepresents the chain of ownership of the copyrighted works at issue. The evidentiary record conclusively establishes the lawful transfer and continuity of title. On July 13, 2022, Flava Works, Inc. executed a Copyright Transfer Agreement assigning to Phillip Bleicher all of its intellectual property, including all right, title, and interest in the copyrighted works, trademarks, customer databases, and digital content owned or controlled by the assignor. The Agreement granted Bleicher the full right to reproduce, distribute, publish, license, enforce, and otherwise exploit the assigned works and was duly notarized in Cook County, Illinois. It further provided that it may be recorded with the United States Copyright Office to provide constructive notice of the transfer under 17 U.S.C. § 205. A copy of this agreement is attached as Exhibit A.

The transferred works include, among others, the copyrighted materials registered with the United States Copyright Office under Registration Nos. PAU 4-192-666, PA 0002025857, and PA 0001687480. Each of these registrations appears in Addendum A to the 2022 Agreement and includes works that Defendant Gordon unlawfully accessed and reproduced. Following that transfer, Bleicher executed two subsequent notarized agreements that maintain the ownership chain. In August 2022, Bleicher entered into a Licensing and Content Publishing Agreement with Blatino Media, Inc., granting it exclusive rights to publish and distribute the works. In March 2024, Bleicher executed a Copyright Enforcement Services Agreement appointing FlavaWorks Entertainment, Inc. as his exclusive enforcement agent. Both agreements were notarized and recorded with the U.S. Copyright Office. Bleicher serves as President of both Plaintiff entities, ensuring continuous operational control.

Consequently, Bleicher is the lawful copyright owner, Blatino Media, Inc. is the exclusive publisher, and FlavaWorks Entertainment, Inc. is the authorized enforcement agent. The Plaintiffs therefore possess both independent and derivative standing to prosecute this action. Defendant's insinuations of ownership defects are demonstrably false, contradicted by notarized instruments, and irrelevant to the question of venue.

Defendant's Reply further introduces new accusations of "forum shopping" and novel claims concerning judicial economy, docket congestion, and an alleged lack of an Illinois nexus. None of these arguments appeared in his original Motion to Transfer (Dkt. 122), and because Plaintiffs had no prior opportunity to address them, these new matters are procedurally improper and should be disregarded. Even if considered, the arguments lack merit. Plaintiffs' forum choice is entitled to substantial deference, and Illinois courts have consistently upheld jurisdiction under identical circumstances involving the same website, the same Terms of Service, and the same forum-selection clause. See *Flava Works, Inc. v. Rossi*, No. 12-cv-1885, 2013 WL 1283829 (N.D. Ill. Mar. 29, 2013), where the Court held that the defendant waived his ability to challenge personal jurisdiction and venue by consenting to an enforceable forum-selection clause. Defendant's prior assent to Plaintiffs' Terms of Service which expressly require that any action to enforce the agreement be brought in the federal or state courts located in Chicago, Illinois, or Miami, Florida defeats any claim of forum shopping or inconvenience.

Defendant's Reply therefore introduces new and misleading assertions concerning a non-party's bankruptcy, challenges Plaintiffs' ownership despite a notarized and recorded copyright transfer, and expands his venue arguments well beyond the scope of his Motion. Plaintiffs submit this Sur-Response solely to correct the record and to ensure that the Court's consideration of the pending motion proceeds based on accurate and complete information.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court accept and consider this Sur-Response as part of the record, disregard the new and improper arguments raised for the first time in Defendant's Reply, and grant such other and further relief as this Court deems just and appropriate.

Respectfully submitted,
*/s/Hameed Odunewu*
FlavaWorks Entertainment,
Inc. and Blatino Media, Inc.

By: s/ *Hameed Odunewu*
Hameed Odunewu (ARDC No. 6346462)
FlavaWorks Entertainment, Inc., Blatino Media, Inc.
2705 West Fulton St
Chicago, IL 60612-2003
(240) 918-2785 Telephone
Hameed@flavaworks.com

COPYRIGHT TRANSFER AGREEMENT This Copyright Transfer Agreement ("Agreement") is made and entered into as of July 13, 2022 (the "Effective Date"), by and between:

1. Flava Works, Inc., an Illinois corporation with its principal place of business at 2445 West Harrison St, Chicago, IL 60612 ("Assignor"); and
2. Phillip Bleicher, an Illinois resident with an address at 2445 West Harrison, Chicago, IL 60612 ("Assignee").

RECITALS WHEREAS, Assignor is the legal and rightful owner of certain copyrights, including those listed in Addendum A attached hereto (the "Copyrights"); and WHEREAS, Assignor desires to transfer, assign, and convey to Assignee all of its rights, title, and interest in and to the Copyrights; and WHEREAS, Assignee desires to acquire all rights, title, and interest in and to the Copyrights;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. ASSIGNMENT OF COPYRIGHTS 1.1 Transfer of Rights. Assignor hereby irrevocably assigns, transfers, and conveys to Assignee all of its rights, title, and interest in and to the Copyrights, including but not limited to all rights to reproduce, distribute, publicly display, publicly perform, and create derivative works, and all other exclusive rights afforded to copyright owners under the U.S. Copyright Act and applicable international laws. 1.2 Ownership and Control. Assignee shall have the sole and exclusive ownership of the Copyrights, including the right to register, enforce, sell, license, and otherwise exploit the Copyrights in any manner and in any medium now known or hereafter developed.

2. CONSIDERATION 2.1 The Parties agree that the transfer of the Copyrights is made in exchange for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

3. REPRESENTATIONS AND WARRANTIES 3.1 Authority. Assignor represents and warrants that it is the sole and exclusive owner of the Copyrights, that it has full authority to enter into this Agreement, and that the Copyrights are free of any liens, claims, or encumbrances. 3.2 No Infringement. Assignor represents and warrants that to the best of its knowledge, the Copyrights do not infringe upon any third-party rights. 3.3 Further Assurances. Assignor agrees to execute any additional documents reasonably required to perfect the transfer of ownership of the Copyrights to Assignee.

4. INDEMNIFICATION 4.1 Assignor agrees to indemnify, defend, and hold harmless Assignee from and against any and all claims, damages, liabilities, costs, and expenses (including reasonable attorneys' fees) arising out of any breach of Assignor's representations and warranties contained in this Agreement.

5. RECORDATION OF TRANSFER 5.1 The parties agree that this Agreement may be recorded with the U.S. Copyright Office to provide constructive notice of the transfer in accordance with 17 U.S.C. § 205.

6. MISCELLANEOUS 6.1 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without regard to conflict of law principles. 6.2 Entire Agreement. This Agreement, including Addendum A, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements, whether written or oral. 6.3 Severability. If any provision of this Agreement is held invalid or unenforceable, the remaining provisions shall remain in full force and effect. 6.4 Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. 6.5 Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

7. NOTARY ACKNOWLEDGMENT State of Illinois County of Cook On this 13 day of July, 2022 before me, a Notary Public in and for the said state, personally appeared Phillip Bleicher and Authorized Representative of Flava Works, Inc., known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained. IN WITNESS WHERE OF, I hereunto set my hand and official seal.

Notary Public Name: DANIEL NELSON Signature: [signature]

My Commission Expires: NOV. 6, 2024

DANIEL H NELSON
Official Seal
Notary Public - State of Illinois
My Commission Expires Nov 6, 2024

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

FLAVA WORKS, INC.

By: [signature]

Name: Phil Bleicher

Title: CEO

Date: 7-13-22

PHILLIP BLEICHER

By: [signature]

Date: 7-13-22

WITNESS: Christian Black

By: [signature]

Date: 07-13-22

| ADDENDUM A COPYRIGHT REGISTRATIONS | | |
|---|---|---|
| Title of Work | Copyright Date | Copyright # |
| Bad Boy Detention : F is for Fuck. | 2012 | PA0001797213 |
| Bad Boy Detention 2 - Bareback Sessions. | 2012 | PA0001804965 |
| Bad Boy Detention 3 - Raw Trouble. | 2013 | PA0001861010 |
| BAREBACK BOOTY BANDITS. | 2012 | PA0001917774 |
| BAREBACK BOOTY BANDITS. | 2012 | PA0001832507 |
| BAREBACK BUSSY #1. | 2015 | PA0002037043 |
| BAREBACK BUSSY #2: BREED AND BOUNCE. | 2015 | PA0002025855 |
| BAREBACK STUDY HALL #3: ENCOUNTERS. | 2015 | PA0002037056 |
| BAREBACK STUDY HALL #4: LESSONS LEARNED. | 2015 | PA0002025860 |
| BAREBACK STUDY HALL #5: CUTTING CLASS. | 2015 | PA0002036970 |
| BIG BLACK & BAREBACK. | 2011 | PA0001788831 |
| Big Black Dick 2: Ouch! | 2011 | PA0001802985 |
| Big Black Dick 3: Third Leg. | 2012 | PA0001797171 |
| Big Black Dick 3: Third Leg. | 2012 | PA0001804964 |
| Big Black Dick 4: Inches of Pain. | 2013 | PA0001861008 |
| Big Black Dick. | 2011 | PA0001748153 |
| BLACK BAREBACK COLLEGE #1. | 2016 | PA0002037057 |
| BLACK IN WHITE #2 INTERRACIAL BAREBACK. | 2016 | PA0001993086 |
| BLACK IN WHITE. | 2012 | PA0001841887 |
| Castro 2 : the fuck video. | 2005 | PA0001294214 |
| Castro behind the photoshoot. | 2005 | PA0001294212 |
| Castro reloaded. | 2005 | PA0001294217 |
| Chino in the Raw. | 2009 | PA0001668277 |
| Cocoboyz.com 2010. | 2010 | VA0001861560 |
| COCODORM RAW #1. | 2015 | PA0002025848 |
| COCODORM RAW #2: Skeet & Eat. | 2015 | PA0002036972 |
| COCODORM RAW #3: Fucking for Coins. | 2015 | PA0002037060 |
| Cocodorm.com 2010. | 2010 | VA0001861558 |
| CODY KYLER'S PINGA PARADISE #2. | 2010 | PA0001737150 |
| Cody Kyler's Pinga Paradise. | 2009 | PA0001668281 |
| DOMINANT RAW TOPS #4:Up in the Guts! | 2013 | PA0001841878 |
| DOMINANT RAW TOPS #7:Man Milk. | 2014 | PA0002036969 |
| Dominant Raw Tops 3: Nut up or Shut up! | 2012 | PA0001803007 |
| Dominant Raw Tops 3: Nut up or Shut up! | 2012 | PA0001804962 |
| Dominant Raw Tops. | 2011 | PA0001748151 |
| Dorm life : no. 3. | 2005 | PA0001298415 |
| Dorm life : no. 4. | 2005 | PA0001298397 |
| Dorm life : no. 6. | 2005 | PA0001298401 |
| Dorm life : no. 7, Hot & creamy. | 2005 | PA0001298403 |
| Dorm life 1 & 2. | 2005 | PA0001295163 |
| Dorm Life 12 - Dick Addiction. | 2008 | PA0001764960 |
| Dorm Life 12 : Dick Addiction. | 2008 | PA0001635732 |
| Dorm Life 13 - Skipping Class for Ass. | 2008 | PA0001764946 |
| Dorm Life 14 - The Dick Down. | 2009 | PA0001668240 |
| Dorm Life 15 - After School Fuck Sessions. | 2009 | PA0001668343 |
| Dorm Life 16 : Fucking For Extra Credit. | 2009 | PA0001666879 |

EXHIBIT A

**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

FLAVAWORKS ENTERTAINMENT, INC.,
BLATINO MEDIA, INC.,

Plaintiffs,

vs.

**CASE NO.: 1-24-cv-09725**
Honorable Franklin U. Valderrama
Magistrate: Honorable Appenteng

JOHN DOES, et al., including
CHRISTOPHER LARINO and
MICHAEL SHANE GORDON, et al,

Defendants.
______________________________/

**MOTION FOR AN INTERDISTRICT TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA OR DISMISSAL.**

Now comes the Defendant, Mr. Michael Shane Gordon, by and through his attorney, Mr. Michael P. Simkus, pursuant to 28 U.S.C. § 1400(a) and 28 U.S.C. § 1404(a), and hereby respectfully moves this Court for an Interdistrict Transfer from the Northern District of Illinois to the United States District Court for the Northern District of Georgia, dismissal or for relief this court deems just.

The Court should grant the Interdistrict Transfer to the Northern District of Georgia or dismiss this lawsuit because:

A. **This Defendant is a resident and domiciled in Georgia**.
B. **Plaintiffs Can Never Exercise Personal Jurisdiction over this Defendant in the Northern District of Illinois.**
C. **Transfer to the United States District Court for the Northern District of Georgia is in the best *Interests of Justice***.
D. **Plaintiffs' Fourth Amended Complaint is fatally deficient and cannot be cured against this Defendant, and this lawsuit must be transferred to the United States District Court for the Northern District of Georgia or dismissed.**

In support of this Motion, the Defendant states as follows:

1. Plaintiff filed this copyright infringement action in the United States District Court for the Northern District of Illinois and obtained service upon the Defendant on July 18, 2025, in Alpharetta, Georgia.

2. The United States District Courts have original jurisdiction over this copyright infringement action pursuant to 28 USCS § 1338.

**A. <u>This Defendant is a resident of Georgia.</u>**

1. For copyright infringement actions, 28 U.S.C. § 1400(a), provides:

“Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs *may be instituted in the district in which the defendant or his agent resides* or may be found.” [Emphasis added.]

2. The Defendant is domiciled in and a resident of Alpharetta, Georgia. [Attached as Exhibit 1 is the Affidavit of the Defendant, Mr. Michael Shane Gordon, dated September 4, 2025. Please see Exb. 1 ¶9.]

3. Plaintiffs fail to meet the “residency” requirement of 28 U.S.C. § 1400(a) for this Defendant. Further, pursuant to 28 U.S.C. § 1391(c), for venue purposes, the Defendant “…shall be deemed to reside in the judicial district in which that person is domiciled.” The United States District Court for the Northern District of Georgia is where the Defendant is domiciled, and therefore, a resident.

**B. <u>Plaintiffs Can Never Exercise Personal Jurisdiction over this Defendant in the Northern District of Illinois.</u>**

1. Plaintiffs can never exercise personal jurisdiction in the United States District Court for the Northern District of Illinois over this Defendant for the following reasons:

a. The Defendant does not maintain a residence, a place of business or have any connection within the Northern District of Illinois. [See Exb.1 ¶4.]

b. The Defendant has never conducted any business or otherwise availed himself of the benefits of the Northern District of Illinois. [See Exb.1 ¶5.]

c. The Defendant has never entered into any service agreement with the Plaintiffs nor agreed to any clause that mandated jurisdiction be within the Northern District of Illinois. [See Exb.1 ¶6.]

d. The Defendant has never agreed to be bound by any Terms and Conditions alleged by the Plaintiffs. [See Exb.1 ¶6.]

e. The Defendant has not consented to personal jurisdiction in the Northern District of Illinois. [See Exb.1 ¶7.]

f. The Defendant is a licensed attorney to practice law in Georgia and is not licensed in any other jurisdiction in the United States. The Defendant has not appeared in any court room outside of the State of Georgia. [See Exb.1 ¶8.]

g. The Defendant has never represented any client for a matter in any United States District Court District, let alone a lawsuit for a client in the Northern District of Illinois. [See Exb.1 ¶11.]

2. Plaintiffs can never allege facts sufficiently, and in good faith, that this honorable court can exercise personal jurisdiction of this Defendant in the Northern District of Illinois.[1]

[1] This Defendant reserves the right to file a Rule 12(b)(6) Motion to Dismiss as the Fourth Amended Complaint is bereft of adequate facts that sufficiently provide adequate notice nor establish a lawsuit for copyright infringement. A Rule 12(b)(6) motion would establish that the Fourth Amended Complaint fails to allege that copyrighted works have been registered by the Plaintiffs with the United States Copyright Office. Plaintiffs make a vague and ambiguous assertion that Plaintiff Flava Works Entertainment "has applied for and has registered various copyrights for its works." See, Fourth Amended Complaint, p. 3, ¶ 14. That does not satisfy this Court's subject matter jurisdiction. 17 U.S.C. § 441(a). [The United States Supreme Court in *Fourth Estate Public Benefit Corporation v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), interpreted the phrase "registration has been made" in 17 U.S.C. § 411(a) to mean that the Copyright Office must have completed the registration process, rather than merely the submission of a copyright application by the claimant. The Supreme Court clarified that the act of registration is completed when the Copyright Office registers the copyright, not when the application is submitted. Thus, a copyright infringement lawsuit can only proceed after the Copyright Office has acted on the registration application. "The burden of establishing federal jurisdiction is on the party asserting such jurisdiction, and the jurisdictional basis must be clear from the face of the complaint itself." See, *Burns v. Rockwood Distributing Co.*, 481 F. Supp. 841, 848 (N.D. Ill. 1979).]

C. **Transfer to the United States District Court for the Northern District of Georgia Is in the best *Interests of Justice.***

1. Transfer is appropriate as 28 U.S.C. § 1404(a) states when: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

2. First, Plaintiffs could have only filed its lawsuit <u>against this Defendant</u> in the United States District Court for the Northern District of Georgia. Second, in the interest of justice, the court should transfer to the United States District Court for the Northern District of Georgia for the following reasons:

   a. The Defendant has been diagnosed with and currently suffers from various physical and anxiety conditions which would make long-distance travel to the Northern District of Illinois for court proceedings painful, burdensome, and expensive. [See Exb.1 ¶12.]

   b. The Defendant also suffers from a reduced immune system resistance due to autoimmune disease, psoriatic arthritis, anxiety disorder, and agoraphobia. [See Exb.1 ¶12.]

   c. Transferring this case to the United States District Court for the Northern District of Georgia would serve the interests of justice and the convenience of the parties and witnesses, as the Defendant and potential witnesses are located within the jurisdiction of Northern District of Georgia.

D. **Plaintiffs Fourth Amended Complaint is fatally deficient and cannot be cured against this Defendant, and must be transferred to the United States District Court for the Northern District of Georgia or dismissed.**

1. Finally, the Plaintiffs' deficient pleading filed in the Northern District of Illinois procedural defect cannot be cured to meet the residency requirements of 28 U.S.C. § 1400(a) and 28 U.S.C. § 1391(c) against this Defendant.

2. As stated in Footnote 1, Plaintiff, in the Fourth Amended Complaint, failed to properly plead a copyright infringement action.[2]

3. Vis-à-vis this Defendant, Plaintiffs' Fourth Amended Complaint fails to sufficiently allege, and more importantly, Plaintiffs can never allege in good faith:

    a. That this Defendant resides in the Northern District of Illinois.

    b. That this Defendant had continuous and systemic contact with the State Illinois as well as within the Northern District of Illinois.

    c. That this Defendant engaged in a significant act within the State Illinois as well as within the Northern District of Illinois.

---

[2] Plaintiff Flava Works Entertainment, Inc., is a corporation which purports to produce gay adult entertainment works in the forms of DVDs, magazines, websites, pictures, streaming videos, and various other medias. See, Fourth Amended Complaint, p. 3, ¶ 12. Plaintiff Flava Works Entertainment asserts that it has "applied for and has registered *various copyrights for its works*." See, Fourth Amendment Complaint, p. 3, ¶ 14 (*emphasis added*). Plaintiff Flava Works Entertainment neither alleges its ownership of any specifically identifiable US copyright registration, nor provides a copy of a registration attached as an exhibit to the Fourth Amended Complaint.

Plaintiff Blatino Media, Inc., neither alleges to have produced any copyrightable works nor alleges that it has applied for and registered any such works. Plaintiff Blatino Media neither alleges nor provides a copy of any specifically identifiable US copyright registration as an exhibit.

Moreover, Plaintiffs Fourth Amended Complaint fails to state where the copyright infringement occurred, when the copyright infringement occurred, how the copyright infringement occurred and what was specifically infringed.

As an alternative remedy for an interdistrict transfer to the Northern District of Georgia, this court could also enter a Dismissal pursuant to 28 U.S.C. § 1406, which provides that when a case is filed in a district where venue is improper, the district court has the authority to either dismiss the case or transfer it to a district or division where it could have been properly brought, if doing so is in the interest of justice. The Seventh Circuit has clarified that venue is considered improper under § 1406(a) only if it does not meet the requirements of the federal venue statutes. See *In re LimitNone*, LLC, 551. F.3d 572 (7th. Cir 2008).

d. That this Defendant has engaged in acts that satisfy Illinois' long-arm statute such that those acts provide personal jurisdiction over this Defendant in the Northern District of Illinois.

e. That the Plaintiffs' copyright works and interests are situated in the Northern District of Illinois.

f. That the Plaintiffs can plead in another Amended Complaint and attach an executed copy of their Terms and Conditions Agreement between Plaintiffs and this Defendant because no such agreement exists.

g. That the Plaintiffs can plead in another Amended Complaint and attach evidence that this Defendant accessed and agreed to be bound by Plaintiffs' Terms and Conditions because no such evidence exists.

h. That the Plaintiffs can plead in another Amended Complaint that the FlavaWorks' Terms and Conditions are presented on Plaintiffs' website(s) in a manner sufficient to bind users to those Terms and Conditions and such Terms and Conditions were agreed between Plaintiffs and this Defendant because neither such agreement nor such evidence exists.

**WHEREFORE**, for the reasons stated above, the Defendant Michael Shane Gordon respectfully requests that this Honorable Court grant an interdistrict transfer of this lawsuit from the United States District Court for the Northern District of Illinois to the United States District Court for the Northern District of Georgia, dismissal, or for relief the court deems just.

Dated: September 5, 2025.

*(s) Michael P. Simkus*
**FS CORPS, Professional Corporation**
MICHAEL P. SIMKUS, ESQ.
4320 WINFIELD ROAD SUITE 200
WARRENVILLE, ILLINIOIS 60555

**Exhibit B**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

FLAVAWORKS ENTERTAINMENT, INC.,
BLATINO MEDIA, INC.,

Plaintiffs,

vs.

**CASE NO.: 1-24-cv-09725**
Honorable Franklin U. Valderrama
Magistrate: Honorable Appenteng

JOHN DOES, et al., including
CHRISTOPHER LARINO and
MICHAEL SHANE GORDON, et al,

Defendants.
_______________________________/

**AFFIDAVIT OF MICHAEL SHANE GORDON**
STATE OF GEORGIA

I, MICHAEL SHANE GORDON, residing at 14108 Masters Way, Alpharetta, Georgia, being of legal age and competent to testify, hereby declare under oath as follows:

1. I am the Defendant in the above-captioned matter and have personal knowledge of the facts stated within this affidavit.

2. This affidavit is made in support of the Defendant's Motion to Transfer Venue pursuant to 28 USCS § 1404 on the grounds that the Defendant does not reside in the Northern District of Illinois and resides in the Northern District of Georgia where venue is appropriate.

3. I live outside the jurisdiction of the Northern District of Illinois.

4. I do not maintain a residence, a place of business, or have any connection to the Northern District of Illinois.

5. I have not conducted any business within or otherwise availed myself of the benefits of the Northern District of Illinois.

6. I have neither entered into any service agreement with the Plaintiffs nor agreed to any clause that mandated jurisdiction be within the Northern District of Illinois. I also have never agreed to be bound by any Terms and Conditions alleged by the Plaintiffs.

7. In short, I have not consented to the personal jurisdiction of the Northern District of Illinois.

8. I am a licensed attorney to practice law in Georgia and am not licensed in any other jurisdiction in the United States. I provide legal services to my employer's clients. I have not appeared in any court room outside of the State of Georgia.

9. My primary residence is located at 14108 Masters Way, Alpharetta, Georgia, which is within the jurisdiction of Northern District of Georgia.

10. My office is in Alpharetta, Georgia, which is also within the jurisdiction of Northern District of Georgia.

11. I have never represented any client for a matter in any United States District Court District, let alone a lawsuit for a client in the Northern District of Illinois.

12. I have been diagnosed with and currently suffer from various physical and anxiety conditions which would make long-distance travel to the Northern District of Illinois for court proceedings painful, burdensome, and more costly. These conditions include reduced immune system resistance due to autoimmune disease, psoriatic arthritis, anxiety disorder, and agoraphobia.

13. Transferring this case to a District Court which is within the jurisdiction of Northern District of Georgia would serve the interests of justice and the convenience of the parties and witnesses, as the Defendant and potential witnesses are located within the jurisdiction of Northern District of Georgia.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Alpharetta, Georgia on September 4th, 2025.

Michael Shane Gordon

SABA AKRAM
NOTARY PUBLIC
FORSYTH COUNTY
GEORGIA
EXPIRES
DEC 21, 2026

NOTARY PUBLIC

Subscribed and sworn to before me this 4th day of September 2025.

Exhibit